**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **THOMAS E. HALL, et al.** | |
| Plaintiff, | CASE NO. 1:09-cv-00800 |
| vs. | JUDGE DAN AARON POLSTER |
| **VITRAN EXPRESS, INC.** | |
| Defendant. | **PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS** |

\* \* \* \*

**Introduction**

On July 23, 2009, Plaintiffs filed their Amended Class Action Complaint alleging that Defendant Vitran Express, Inc. violated several provisions of the Fair Credit Reporting Act ("FCRA") when it took adverse action against Plaintiffs, based in whole or in part, on criminal background reports furnished by USIS Commercial Services, Inc. ("USIS"). On August 7, 2009, Vitran moved to dismiss Plaintiffs' Amended Complaint.

**I.     The Legal Standard**

"Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). When ruling on a Rule 12(b)(6) motion to dismiss, the court must view the complaint in

1

a light most favorable to the non-moving party, taking all well-pleaded factual allegations as true. *Tackett v. M&G Polymers,* 561 F.3d 487, 488 (6th Cir. 2009); *see also, Williams v. City of Cleveland,* No. 1:09 CV 1310, 2009 U.S. Dist. LEXIS, *3 (N.D. Ohio July 16, 2009) (stating that "the court must construe the complaint liberally in a light most favorable to the non-moving party").

Dismissal is improper where the complaint contains enough facts to state a claim for relief that is plausible. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). While a plaintiff is required to demonstrate a right to relief above the level of speculation, specific facts are not necessary. *Erikson v. Pardus,* 551 U.S. 89, 93 (2007). Rather, the complaint "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Twombly,* 550 U.S. at 555). Notably, the plausibility standard espoused in *Twombly,* "is not akin to a 'probability requirement.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 2009 U.S. App. LEXIS 19797 at *9 (6th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949). Most importantly, "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

**II.     Argument**

    **A. COUNTS ONE AND TWO – Vitran's claim to a statutory exception to liability for failing to provide preadverse action notice is an affirmative defense at best and not a ground to dismiss Plaintiffs' Amended Complaint. (15 U.S.C. §§ 1681b(b)(3)(A)(i) and (A)(ii)).**

Plaintiffs' Amended Complaint is framed around Hall's experience applying for a commercial truck driver position with Vitran. With specific detail, Hall alleges that he applied at Vitran's terminal facility in Brook Park, Ohio, on January 15, 2008, at which time he signed a

document purportedly consenting to an investigation of the statements made in his application. (Doc. 6, ¶7-8) Vitran then ordered a nationwide criminal background report from USIS Commercial Services, Inc., which grossly misidentified Hall as having twenty-seven (27) felony convictions for crimes involving moral turpitude. (Doc. 6, ¶9) And immediately after receiving the report, Vitran took adverse action against Hall, documenting a decision not to hire Hall based upon the results of the report. (Doc. 6, ¶10) At no time did Vitran provide Hall with any verbal or written notice that it intended to take adverse action by declining employment based upon the results of the report. (Doc. 6, ¶11) Moreover, Hall was not advised by Vitran of the reason for the adverse action, nor did he learn of the inaccurate report until February 2, 2008, when he received a derogatory letter and a copy of the report from USIS. (Doc. 6, ¶12)

When taken as true, these facts not only alert the sensibilities of fairness and equity, they also trigger the common sensibilities of right and wrong. Here, fairness has been codified in portions of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), which establishes a litany of guidelines binding upon employers who choose to utilize criminal background reports as a precondition of employment. In short, employers generally cannot use such reports without obtaining a valid authorization and release from applicants, and then must inform applicants when the results of the report preclude hiring *before* making a final decision. Further, the applicant is entitled to receive contact information for the reporting agency along with a statement of rights so that he can take affirmative steps to correct any mistakes in the report. The rationale is simple – in a nation of more than 300,000,000 people – the likelihood of a mistaken report is high, and the applicant deserves an opportunity to explain these mistakes to the employer. But as explained below, Vitran operates in the shadows of the FCRA, touting compliance on the one hand while ignoring its legal obligations on the other.

Under 15 U.S.C. §§ 1681b(b)(3)(A)(i) and (A)(ii), a person intending to take adverse action based in whole or in part on a consumer report is required to first provide the consumer with a copy of the consumer report and a description in writing of the rights of the consumer under the FCRA. S*ee Davis v. Reg'l Acceptance Corp.,* 300 F. Supp. 2d 377, 385 (E.D. Va. 2002). This was not done in this case. Notably, the person or entity intending to take such adverse action must furnish the consumer report and consumer rights information to the consumer "*before* taking any adverse action." 15 U.S.C. § 1681b(b)(3)(A). (emphasis added). "Adverse action" in the employment context has been statutorily defined to include "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." § 1681a(k)(1)(B)(ii); *see also, Malone v. Greenville County,* No. 6:06-2631-RBH-BHH, 2008 U.S. Dist. LEXIS 86520, *37-38 (D. S.C. Aug. 11, 2008) (finding that defendant's decision not to hire plaintiff constituted an "adverse action" and denying defendant's motion for summary judgment where evidence demonstrated that defendant's decision was based, at least in part, on information contained in plaintiff's credit report).

Here, Vitran took adverse action, based in whole or in part, on the results of Plaintiffs' criminal background reports before providing Plaintiffs with either a copy of their reports or a description in writing of their rights as consumers under the FCRA.[1] (Doc. 6 at ¶¶ 11, 19) For example, Vitran took adverse action against Hall on or about January 15, 2008, when it documented a decision not to hire him based upon the results of a criminal background report furnished by USIS. *See, Beverly v. Wal-Mart Stores, Inc.,* No. 3:07 CV 469, 2008 U.S. Dist. LEXIS 2266, *8-9 (E.D. Va. Jan. 11, 2008) (holding that a letter denying plaintiff employment

---

[1] It is noteworthy that Vitran does not argue that it actually furnished Plaintiffs with the information required by 15 U.S.C. §§ 1681b(b)(3)(A)(1) and (A)(ii). Rather, Vitran argues that it was not required to provide Plaintiffs such information because it falls within the § 1681b(b)(3)(B) exception to the pre-adverse action disclosure requirements. *See,* Doc. 7 at 2-4.

constituted adverse action within the meaning of § 1681a(k)(1)(B)(ii) as a matter of law). Hall, however, did not receive a copy of his report or a statement of rights until more than two weeks after Vitran documented its adverse employment decision. (Doc. 6 at ¶ 12) *See, also Beverly,* 2008 U.S. Dist. LEXIS 2266, at *11-12 (holding that defendant violated § 1681b(b)(3)(A) if plaintiff received the adverse action notice and the consumer report on the same day because "he necessarily [would] not have [had] a sufficient or reasonable period of time to dispute the inaccuracies in his consumer report before defendant took adverse action against him"). Likewise, Vitran took similar adverse action against the other Plaintiffs without providing any pre-adverse action notice including a copy of their criminal background report or a statement of their rights under the FCRA. (Doc. 6 at ¶ 13, 15)

Vitran relies upon 15 U.S.C. § 1681b(b)(3)(B) as an exception to the notification requirements contained in § 1681b(b)(3)(A)(i) and A(ii). But, Vitran's entitlement to such an exception is merely an affirmative defense, which can be developed during the course of discovery.

15 U.S.C. § 1681b(b)(3)(B) provides the following:

(B) Application by mail, telephone, computer, or other similar means

(i) *If a consumer described in subparagraph (C) applies for employment by mail, telephone, computer, or other similar means*, and if a person who has procured a consumer report on the consumer for employment purposes takes adverse action on the employment application based in whole or in part on the report, then the person must provide to the consumer to whom the report relates, in lieu of the notices required under subparagraph (A) of this section and under section 615(a) . . . **within 3 business days of taking such action, an oral, written or electronic notification** –

(I) that adverse action has been taken based in whole or in part on a consumer report received from a consumer reporting agency;

5

> (II) of the name, address and telephone number of the consumer reporting agency that furnished the consumer report (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a Nationwide basis);
>
> (III) that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide to the consumer the specific reasons why the adverse action was taken; and
>
> (IV) that the consumer may, upon providing proper identification, request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report . . . .

15 U.S.C. § 1681b(b)(3)(B). (emphasis added).

Significantly, 15 U.S.C. § 1681b(b)(3)(C) provides that "[s]ubparagraph (B) shall apply to a person procuring a consumer report in connection with the consumer's application for employment" **only if**:

> (ii) as of the time at which the person procures the report or causes the report to be procured **the only interaction between the consumer and the person in connection with that employment application has been by mail, telephone, computer, or other similar means**.

15 U.S.C. § 1681b(b)(3)(C) (emphasis added). Thus, in order for the exception to the § 1681b(b)(3)(A) disclosure requirements to apply, the applicant for employment must apply solely by "mail, telephone, computer, or other similar means." That never happened here. And common sense suggests that in order to obtain a *signed* authorization, the applicant must generally appear in person at least once during the application process.

Here, Plaintiffs applied for employment with Vitran in person and, thus, do not fall within the purview of § 1681b(b)(3)(B). *See e.g.* Doc. 6 at ¶ 7 (stating that "Hall applied for a commercial truck driver position with Vitran *through its terminal facility in Brook Park, Ohio*"). (emphasis added). Interjecting common sense, it is impossible at the pleading stage of litigation

6

to know the exact means by which each putative class member sought employment with Vitran. *See Iqbal*, 129 S. Ct. at 1950 (noting that the court reviewing a motion to dismiss must draw on its common sense and judicial experience). Moreover, even assuming, arguendo, that the § 1681b(b)(3)(B) exception otherwise applies, Vitran does not fall within this exception because it did not provide Plaintiffs with the required information – **within three business days** – of taking adverse action. *See* Doc. 6, ¶12 (17 days elapsed between the time Vitran took adverse action against Hall and the time he actually received his criminal background report). Even then, Vitran did not orally, electronically, or otherwise, advise Hall of his rights under § 1681b(b)(3)(B).

### B. COUNT THREE – The certification requirement under 15 U.S.C. § 1681b(b)(1) applies to Vitran as an "end-user" of criminal background reports.

Vitran's contention that § 1681b(b)(1) does not apply to the end-user of a consumer report is inconsistent with the plain language of the FCRA. 15 U.S.C. § 1681b(b)(1) provides the following:

> b) Conditions for furnishing and using consumer reports for employment purposes.
>
> (1) Certification from user. A consumer reporting agency may furnish a consumer report for employment purposes only if –
>
>    (A) the person who obtains such report from the agency certifies to the agency that –
>
>       (i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes application; and
>
>       (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and
>
>    (B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under title [15

USC §§ 1681 et seq.], as prescribed by the Federal Trade Commission under section 609(c)(3) [15 U.S.C. § 1681g(c)(3)].

In support of its Motion to Dismiss Count III, Vitran relies on a single case – *Obabueki v. Int'l. Bus. Machines Corp.*, 145 F. Supp. 2d 371 (S.D. N.Y. 2001) – for the proposition that an end user of a consumer report cannot be subject to liability for violating 15 U.S.C. § 1681b(b)(1)(A). Not only is *Obabueki* non-binding on this Court, but the rationale espoused therein is completely inconsistent with the plain language of § 1681b(b)(1). Moreover, no other court has cited *Obabueki* for the proposition that § 1681b(b)(1)(A) applies only to consumer reporting agencies and not to end users.

Where the plain meaning of statutory language is clear, courts should not rely on extrinsic materials for interpretive purposes. *Moses v. Providence Hosp. & Med. Ctr., Inc.,* 561 F.3d 573, 582 (6th Cir. 2009) (quoting *United States v. Choice,* 201 F.3d 837, 840 (6th Cir. 2000)). Here, the plain language of § 1681b(b)(1) sets forth obligations for both consumer reporting agencies as well as end users of consumer reports, including employers. *See, Obabueki,* 145 F. Supp. at 393 (recognizing that § 1681b(b)(1) contains certain obligations for furnishers and *users* of consumer reports). While the consumer reporting agency may not furnish a consumer report for employment purposes without first obtaining the proper certification from the end user, the end user of the report is required to certify that it will comply with specific obligations outlined in the FCRA. For instance, under § 1681b(b)(1)(A)(1), the end user must attest that it has complied with paragraph (2) with respect to the consumer report and that it will comply with paragraph (3), if applicable. Furthermore, § 1681b(b)(1)(A)(1)(ii) requires the user to certify to the consumer reporting agency that it will not use information contained in the consumer report in violation of any applicable Federal or State equal employment opportunity law or regulation. Importantly, the statute does not, in any way, suggest that an aggrieved party

8

cannot assert a cognizable claim against an end user who fails to certify that it will comply with the specific obligations stated in § 1681b(b)(1)(A)(i) and (A)(ii).

Despite indications to the contrary, the *Obabueki* court held that a plaintiff could not maintain a cause of action against a user of a consumer report who failed to certify to the consumer reporting agency that it would comply with applicable law. 145 F. Supp. at 394. Although Vitran contends that the court in *Obabueki* reached this result "after conducting an exhaustive analysis of the statute," the *Obabueki* court failed to cite any authority in support of its conclusion regarding § 1681b(b)(1)'s "limited" applicability. *See,* Doc. 7 at 5.

Indeed, the *Obabueki* court's rationale is flawed in several ways. First, the court relied upon the plain language of § 1681b(b)(1) finding that "each of the subsections . . . does not prescribe obligations for both agencies and users" and concluded that while §§ 1681b(b)(2)-(3) applies to end users – and not to consumer reporting agencies – § 1681b(b)(1) targets consumer reporting agencies – and not end users. *Obabueki* , 145 F. Supp. At 393. The court missed the mark on this issue. Specifically, the court failed to address the fact that subsection (1) – unlike subsections (2) and (3) – does not limit its prescribed duties and obligations to either agencies or users.[2] By contrast, as discussed above, subsection (1) targets the conduct of both consumer reporting agencies and end users.

Next, the court cited a Federal Trade Commission ("FTC") opinion letter addressing whether a consumer reporting agency has an obligation to procure and/or save a consumer's authorization form.[3] But the opinion letter clarifies that it is the end user's responsibility to

---

[2] Subsections § 1681b(b)(2) and (b)(3) do not impose any obligations on consumer reporting agencies.

[3] 15 U.S.C. § 1681b(b)(2)provides:

(2) Disclosure to consumer.

9

secure the appropriate authorization from the consumer prior to procuring a consumer report. The letter does not, in any way, indicate that an end user is not required to furnish the appropriate certification to the consumer reporting agency or that it cannot be held liable for failing to provide such information. Consequently, the *Obabueki* court's reliance on the FTC opinion letter is misplaced.

In a final attempt to justify its conclusion, the *Obabueki* court – with little explanation – cited another FCRA provision: § 1681e(a). 145 F. Supp. at 393. That provision requires, among other obligations, that consumer reporting agencies maintain reasonable procedures to avoid FCRA violations and to limit the furnishing of consumer reports to the purposes prescribed by the Act. 15 U.S.C. § 1681e(a). Additionally, § 1681e(a) requires a consumer reporting agency to obtain a certification from the end user identifying themselves, certifying the purpose for which the information is sought, and assuring that they will not use the information for any other purpose. *Id.* In essence, the court attempts to analogize § 1681e(a) and § 1681b(b)(1) concluding that both provisions impose obligations on consumer reporting agencies only and do not place affirmative obligations on the end users of consumer reports.

However, no court has held that an end user cannot be subject to liability under § 1681e(a) for failing to furnish the appropriate certification to the consumer reporting agency. Rather, at least one court has found that Section "1681e(a) includes language concerning the duties of *prospective **users*** of credit information…." *See Mirocha v. TRW, Inc.,* 805 F. Supp. 663, 671 (S.D. Ind. 1992) (recognizing that § 1681e(a) imposes duties on the prospective user,

---

(A) In general. Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless –

    (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
    (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

but ultimately rejecting plaintiff's claim on this point because the plaintiff alleged violations regarding defendant's supposed failure to maintain reasonable procedures to assure the maximum possible accuracy of plaintiff's credit records, a duty within the purview of the agency's statutory responsibilities).

Accordingly, under the plain language of the statute, if a consumer reporting agency furnishes a consumer report without first obtaining the required certification, both the agency and the end user have fallen short of their duties under the Act. In particular, while the consumer reporting agency sent the consumer report without the proper certification in violation of § 1681b(b)(1)(A), the end user obtained the report without completing its obligation to furnish the appropriate certification. This Court should deny Vitran's Motion to Dismiss Count III because Plaintiffs have asserted an actionable claim under § 1681b(b)(1)(A).

### C. COUNTS FOUR AND FIVE – Vitran's claim to a statutory exception to liability for failing to obtain a valid authorization using a clear and conspicuous disclosure is also an affirmative defense at best and not a ground to dismiss Plaintiffs' Amended Complaint. (15 U.S.C. §§ 1681b(b)(2)(A)(i) and 1681b(b)(2)(A)(ii))

Vitran essentially concedes that it failed to provide proper disclosure to Plaintiffs and disregarded its duty to obtain authorization prior to procuring Plaintiffs' consumer reports.[4] Rather, Vitran again relies upon a statutory exception as an excuse to compliance. *See* 15 U.S.C. § 1681b(b)(2)(B). Like the §1681b(b)(3)(B)(i) exception discussed above, § 1681b(b)(2)(B) only applies where the consumer applied solely by "mail, telephone, computer, or other similar means." *See,* § 1681b(b)(2)(B). As discussed previously, Plaintiffs applied for employment with Vitran in person. Thus, as with Counts I and II, Vitran was not excused from its statutory obligations under§ 1681b(b)(2)(A)(i) and (A)(ii) by virtue of the § 1681b(b)(2)(B) exception.

---

[4] As with Counts I and II, Vitran does not argue that it complied with § 1681b(b)(2)(A)(i) or (A)(ii). Instead, Vitran again argues that it falls within an exception to those subsections. *See,* Doc. 7 at 5-7.

Under 15 U.S.C. § 1681b(b)(2)(A)(i), prior to obtaining a consumer report for employment purposes, the employer is required to provide a clear and concise disclosure to a consumer in writing that a consumer report may be obtained for employment purposes. Furthermore, 15 U.S.C. § 1681b(b)(2)(A)(ii) requires the user of a consumer report to obtain valid authorization in writing from a consumer before procuring his or her consumer report for employment purposes. Here, Vitran not only failed to clearly and concisely disclose to Plaintiffs its intention to obtain their criminal background reports for employment purposes, but it also failed to obtain Plaintiff's authorization prior to retrieving such reports from USIS. (Doc. 6 at ¶ 43, 48) Consequently, Vitran's Motion to Dismiss Counts VI and V should be denied.

**D. COUNTS SIX AND SEVEN – Section 1681m(h)(8) only precludes private causes of action for violations of § 1681m(h) and does not eliminate an aggrieved party's long-established right to bring suit for violations of § 1681m, in its entirety. (15 U.S.C. § 1681m(a)(2)(B) and 15 U.S.C. § 1681m(a)(3)(A))**

Section § 1681m(a)(2)(B) requires a user of a consumer report to provide the consumer with "a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken. . . ." Furthermore, § 1681m(a)(3)(A) requires a user of a consumer report to provide a consumer an oral, written, or electronic notice of the consumer's right to obtain, within sixty (60) days, a free copy of the consumer report regarding the consumer from the consumer reporting agency. Section 15 U.S.C. § 1681b(b)(2)(B) provides a limited exception to those requirements where an individual applies for employment by "mail, telephone, computer, or other similar means." In this case, Vitran violated both § 1681m(a)(2)(B) and § 1681m(a)(3)(A) when it failed to furnish Plaintiffs with the required information. *See,* Doc. 6 at ¶ 53, 58. Here again, Vitran does not fall within the § 1681b(b)(2)(B) exception because Plaintiffs did not apply

for employment with Vitran by "mail, telephone, computer, or other similar means." Accordingly, Vitran's Motion to Dismiss Counts VI and VII should be denied.

Plaintiffs may maintain a private cause of action against Vitran under §§ 1681n and 1681o based upon Vitran's violations of § 1681m(a)(2)(B) and 15 U.S.C. § 1681b(b)(3)(B) because § 1681m(h)(8) did not eliminate private causes of action, which were available prior to the enactment of the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"). Simply, § 1681m(h)(8) only bars private causes of action for violations of § 1681m(h) and does not eliminate an aggrieved party's long-established right to bring suit under § 1681n and § 1681o for violations of § 1681m's other provisions.

In 1970, Congress authorized a private right of action to recover damages for violations of the FCRA. *TRW, Inc. v. Andrews,* 534 U.S. 19, 23 (2001). Under the FCRA an individual may recover damages for a willful violation of the Act – pursuant to § 1681n – or for a negligent violation of the Act – pursuant to 15 U.S.C. § 1681o. In 2003, Congress passed the FACTA, amending the FCRA. *See,* 15 U.S.C.§ 1681m(h); *Perry v. First Nat'l Bank,* 459 F.3d 816, 819 (7th Cir. 2006). Relevant here is § 1681m(h), which generally requires users of a consumer report to provide notice to consumers who are offered less favorable credit terms than a substantial proportion of consumers from or through that user, based in whole or in part on the consumer report. *See,* § 1681m(h)(1). Interestingly, Congress also included the following provision in § 1681m(h)(8):

<u>Enforcement</u>

> (A) No civil actions. Sections 616 and 617 [15 U.S.C. §§ 1681 and 1681o] shall not apply to any failure by any person to comply with this section.

      (B) Administrative enforcement. This section shall be enforced exclusively under section 621 [15 U.S.C. § 1681s] by the Federal agencies and officials identified in that section.

While some district courts have held that Congress eliminated all private civil actions for violations of § 1681m by enacting § 1681m(h)(8),[5] neither the Sixth Circuit nor any district court in Ohio has held that the FACTA abrogated the long-established right to bring suit under § 1681n and § 1681o for violations of § 1681m.[6] *See, Tobler v. Equifax,* No.08-cv-12610, 2009 U.S. Dist. LEXIS 44340, *7 (E.D. Mich. May 27, 2009) (recognizing that the Sixth Circuit has yet to address whether the 2003 amendments to the FCRA eliminated the private right of action available to remedy violations of § 1681m). For the reasons stated below, this Court should reject the view that § 1681m(h)(8) eliminated entirely the private right of action available for violations of § 1681m, and instead, adopt the rationale espoused in *Barnette v. Brook Road, Inc.,* 429 F. Supp. 2d 741, 749 (E.D. Va. 2006) ("Congress expressly preserved the private right of action in all but the newly enacted subsections").

There is no dispute that prior to the FACTA, an individual was entitled to pursue a private action against another individual or entity for violating § 1681m. *Barnette,* 429 F. Supp. 2d at 747; *Gelman v. State Farm Mut. Auto. Ins. Co.,* No. 06-5118, 2007 U.S. Dist. LEXIS 58237, *28 (E.D. Pa. Aug. 9, 2007). Importantly, "[a]bsent a clear manifestation of contrary intent . . . a newly-enacted or revised statute is presumed to be harmonious with existing law. . . ." *Carroll v. Comm'r of Internal Revenue,* 71 F.3d 1228, 1231 (6th Cir. 1995) (quoting *Johnson v. First Nat'l Bank of Montevideo,* 719 F.2d 270, 277 (8th Cir. 1983)) (internal quotation marks

---

[5] *Perry,* 458 F.3d at 823, *Tobler v. Equifax,* No. 08-cv-12610, 2009 WL 1491046, *7-8 (E.D. Mich. May 27, 2009); *Meyers v. Freeedon Credit Union,* No. 05-3526, 2007 U.S. Dist. LEXIS 70032, *13-14 (E.D. Pa. Sept. 21,2007); *Gelman v. State Farm Mut. Auto. Ins. Co.,* No. 06-5118, 2007 U.S. Dist. LEXIS 58237, *28 (E.D. Pa. Aug. 9, 2007).

[6] Courts that have found the amendments to have completely eliminated the private cause of action for violations of § 1681m have relied on the use of the word "section" – as opposed to "subsection" – in § 1681m(h)(8). *Murray v. Household Bank,* 386 F. Supp. 2d 993,997 (N.D. Ill. 2005); *but see, Barnette,* 429 F. Supp. 2d 741, 749 (holding that the use of the word "section" was a drafting error).

omitted). Here, as the *Barnette* court points out, Congress did not manifest a clear intention that the private right of action available under §§ 1681n and 1681o be eliminated with respect to § 1681m, in its entirety. By contrast, Congress preserved the private cause of action in Section 312(f) of the FACTA. *Barnette,* 429 F. Supp. 2d at 748. Section 312(f) provides that "[n]othing in this section, *the amendments made by this section,* . . . or any other provision of this Act . . . shall be construed to affect any liability under section 616 or 617 of the Fair Credit Reporting Act. . . ." *Id.* at 748, n.3. (emphasis added). By including this Section within the amendments, Congress expressly intended to preserve the then-existing private rights of action available to remedy violations of § 1681m. *Id.* at 748. Accordingly, § 1681m(h)(8) only precludes individuals from bringing private causes of action for violations of the newly-enacted provisions of the FCRA; most notably, § 1681m(h). *See, Id.* (holding that "§ 312(g) dictates that private individuals may still enforce the requirements of § 1681m that antedated FACTA").

Furthermore, even assuming, arguendo, that Congress did not intend to expressly preserve the private right of action available to remedy violations of § 1681m by including § 312(f), congressional silence of this issue militates against finding that Congress intended to abrogate this right. *See, Perry,* 459 F.3d 816, 823 (acknowledging that "the legislative history of FACTA is silent on the question of whether Congress intended to preclude private rights of action to enforce the entirely of § 1681m"); *Meyers v. Freedom Credit Union,* No. 05-3526, 2007 U.S. Dist. LEXIS 70032,*12 (E.D. Pa. Sept. 21, 2007) (same). Where a particular interpretation of a statute would create "sweeping and relatively orthodox change," Congressional silence on the issue weighs against such an interpretation. *Chisom v. Roemer,* 501 U.S. 380, 396, n. 24 (1991). Thus, as the *Barnette* court concluded, "common sense suggests that had Congress sought to eliminate the ability of consumers to enforce the requirements

created by FCRA, an act intended to protect consumer privacy, some member of the legislature would have noted this withdrawal." *Barnette,* 429 F. Supp. 2d at 748-49. Consequently, regardless of whether Congress included § 312(f) to preserve the private right of action available to remedy violations of § 1681m, Congress did not manifest a clear intention to abrogate such a right as it remained silent on this issue.

Moreover, reading § 1681m(h)(8) to eliminate the private cause of action available to individuals for violations of § 1681m would create anomalous results. Specifically, when Congress enacted the FACTA it added a provision which precludes an individual from bringing suit under §§1681n or 1681o for violations of § 1681m(e), except as provided in § 1681s(c)(1)(B). *See,* 15 U.S.C. § 1681s-2. Similarly, § 1681m(c) expressly creates an exception to liability under § 1681m. In particular, that Section provides that "[n]o person shall be held liable for any violation of [§ 1681m] if he shows . . . he maintained reasonable procedures to assure compliance with the provisions of this section." § 1681m(c). Reading § 1681m(h)(8) to preclude all private causes of action based on violations of § 1681m would render § 1681s-2 and § 1681m(c) redundant and superfluous. *See, Barnette,* 429 F. Supp. 2d at 748. As such, this Court should not read § 1681m(h)(8) to eliminate civil actions for violations of § 1681m entirely, but should limit § 1681m(h)(8) to preclude private actions to remedy violations of § 1681m(h).

In sum, this Court should not grant Vitran's Motion to Dismiss Counts VI and VII because Congress did not eliminate the long-established private right of action under §§ 1681n and 1681o to remedy violations of § 1681m entirely, but only to prevent individuals from asserting claims based on the newly-enacted provisions, specifically § 1681m(h).

**IV.     Conclusion**

For the reasons stated herein, the Plaintiffs respectfully request that this Court deny Vitran's Motion to Dismiss Plaintiffs' Amended Complaint.

        Respectfully submitted,

        STUMPHAUZER, O'TOOLE, McLAUGHLIN,
        McGLAMERY & LOUGHMAN CO., LPA

By:   /s/ Dennis M. O'Toole_____
        Dennis M. O'Toole (0003274)
        Anthony R. Pecora (0069660)
        Matthew A. Dooley (0081482)
        5455 Detroit Road
        Sheffield Village, Ohio  44054
        Tel:   (440) 930-4001
        Fax:  (440) 934-7208
        sheffieldlaw@sheffieldlaw.com
        apecora@sheffieldlaw.com
        mdooley@sheffieldlaw.com
        *Attorneys for Thomas E. Hall and the putative class*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiffs' Response to Defendant's Motion to Dismiss was filed electronically this 8th day of September, 2009. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or via electronic mail.

        /s/ Dennis M. O'Toole_____

G:\25\25747-1\Dismiss Response (Revised 2).docx