**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **THOMAS E. HALL, on Behalf of Himself and All Others Similarly Situated** | |
| Plaintiff, | DISTRICT JUDGE POLSTER |
| vs. | CASE NO. 1:09-cv-00800 |
| **VITRAN EXPRESS, INC.** | |
| Defendant. | |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR LEAVE TO FILE SECOND AMENDED CLASS ACTION COMPLAINT**

I.      Plaintiffs' Motion to Amend is properly granted.

Vitran contends that applicants who received a copy of their consumer report from USIS were on notice that Vitran violated the FCRA.  (Mot. in Opp. at 7) ("[t]he USIS notice informed applicants that Vitran had obtained copies of their consumer reports, provided the applicants with the results of the consumer report, enclosed the consumer report for the applicants' review, and provided the applicant contact information if he required further information").   Such a contention is without merit.  Knowledge that the user of a consumer report has obtained a copy of a party's consumer report is not sufficient to put that party on notice that the user has violated the FCRA. *Andrews v. Equifax Info. Servs., L.L.C.*, 700 F. Supp. 2d 1276, 1279 (W.D. Wash. 2010). Furthermore, the USIS notice merely informed applicants that public-records information was provided to Vitran – not that employment was denied as a result.  The *Andrews* court denied Equifax's motion for summary judgment holding that genuine issues of material fact remained as to whether the plaintiff had knowledge that Equifax violated the FCRA even though the plaintiff

received a notice from a credit union that she was being denied credit based on information contained in a consumer report provided by the defendant and had contacted defendant on two previous occasions to dispute information contained in her consumer report. *Id.* at 1278-79. There, Equifax argued that the plaintiff's claim regarding failure to use reasonable procedures to ensure the accuracy of information was time-barred because plaintiff contacted Equifax on two previous occasions – both of which fell outside the statute of limitations – to dispute information in her credit file. *Id.* at 1278. Equifax further contended that plaintiff's claim for damages based on two occasions when a credit union denied her credit was time-barred because plaintiff had knowledge that defendant violated the FCRA when it received notice from the credit union that it made the decision to deny her credit based on information contained in a consumer report provided by Equifax. *Id.* at 1279.

The court held that Equifax not only failed to put forth sufficient evidence to support its position, but that its arguments were antithetical to the purposes and "divorced" from the language of the FCRA. *Id.* In particular, the court concluded that "inaccurate information in a credit report alone is not a violation of the FCRA," and, therefore, plaintiff's knowledge that Equifax included inaccurate information in her consumer report did not equate with knowledge that it violated the Act. *Id.* at 1278. The Court further held that "[n]o evidence on the record indicate[d] that the denial of credit by a third party could alert [p]laintiff to a violation of the FCRA." *Id.* at 1279.

In its opposition, Vitran unsuccessfully attempts to distinguish *Andrews.* Denying Equifax's motion for summary judgment, the *Andrews* court specifically noted that Equifax failed to produce sufficient evidence that would tie the reports it generated to plaintiff's discovery of the <u>precise violations alleged</u>. *Id.* More specifically, the court emphasized Equifax's

failure to "explain how, from the information it sent, [p]laintiff could discern whether the company's procedures in ensuring accuracy or reinvestigating her dispute were reasonable, indicating a violation" of the FCRA.  *Id.* Indeed, the court noted that Equifax did not provide evidence to indicate that plaintiff was aware of its procedures, that the reports were the kind of investigation contemplated by the Act, or that the reports indicated how and when Equifax disseminated any information to third parties. *Id.*

Here, the majority of the FCRA violations alleged in Plaintiffs' Amended Complaint are premised upon Vitran's failure to comply with the Act's notice requirements prior to taking adverse employment action against applicants. Like Equifax, Vitran fails to explain how Plaintiffs' receipt of a report from USIS apprised them that <u>Vitran</u> violated the FCRA. Significantly, the notice provided by USIS did not inform Plaintiffs that Vitran took adverse action against them based on information contained in their consumer report; rather, the report only indicated that USIS furnished a copy of their consumer report to Vitran.  And providing this <u>notice</u> is a statutory obligation of the consumer reporting agency – not Vitran.  Congress intentionally established separate and independent notice requirements for consumer reporting agencies (USIS) and users (Vitran).  Vitran cannot simply now claim that its obligations are rendered moot by the actions of the consumer reporting agency.

Further, Vitran's obligation to provide adverse action notices does not accrue until it takes adverse action based upon a consumer report.  When hiring personnel generally ignore applicants after making an internal decision to reject employment, how can an applicant discern the basis for Vitran's treatment of his application?  As a result, the applicant has no knowledge that adverse action notification has been triggered by Vitran's conduct.

Moreover, the USIS cover letter did not provide the applicant with contact information for any individual or entity that could inform the applicant that he or she was denied employment based on information contained in his or her consumer report. To the contrary, the report included only USIS's contact information.  The letter provides no information that USIS "did not make the decision to deny employment and is unable to provide the applicant with the specific reason why employment was denied." *See,* 15 U.S.C. § 1681m(a)(2)(B). In sum, Plaintiffs who received a report from USIS were not put on notice that Vitran violated the FCRA and, therefore, their claims are not time-barred by 15 U.S.C. § 1681p(1).[1] *See also, Broccuto v. Experian Info. Solutions, Inc.,* No. 3:07CV782-HEH, 2008 U.S. Dist. LEXIS 37079, *8 (May 6, 2008) (concluding that the FCRA "statute of limitations accrues based on the date the violation was discovered by the consumer, not the date the consumer first observed inaccurate information on their credit report").[2]

Finally, Vitran failed to address the classes of applicants who are indisputably unaware that Vitran violated the FCRA: potential Class Members who did not receive a report from USIS. Prior to March, 2009, Vitran neither provided a clear and conspicuous disclosure to its applicants

---

[1] The cases cited in Vitran's brief stand for the proposition that a consumer has knowledge of a FCRA violation when he observes inaccurate information in his credit report. S*ee e.g., Bittick v. Experian Info. Sols., Inc.,* 419 F. Supp. 2d 917, 918-19 (N.D. Tex. 2006).   Recent cases have rejected the rationale espoused in *Bittick. See, Broccuto v. Experian Info. Solutions, Inc.,* No. 3:07CV782-HEH, 2008 U.S. Dist. LEXIS 37079, *8 (May 6, 2008) (rejecting *Bittick* and noting that while a "handful of district courts" have held that the statute of limitations accrues based on the date that the consumer first observed inaccurate information in their credit report, the "logic of those opinions" does not comport "with a plain reading of the FCRA"); *Andrews,* 700 F. Supp. 2d at 1278 ( "inaccurate information in a credit report alone is not a violation of the FCRA").

[2] The Court in *Broccuto* noted the following with respect to the FCRA statute of limitations:

> The state of limitations is based on a consumer discovering that a bank or credit reporting agency did not take certain steps in response to their dispute. That means the clock does not begin running until a consumer learns information which appears to be normally within the province of the bank or credit reporting agency and not easily discovered by the consumer. . . . [I]t would be difficult to determine exactly when a consumer discovered an FCRA violation at such an early stage of the litigation.

2008 U.S. Dist. LEXIS 37079, at *9, n.1.

nor obtained a valid authorization prior to procuring an applicant's consumer report. *See, Webb v. Bob Smith Chevrolet, Inc.,* No. 3:04CV-66-H, 2005 U.S. Dist. LEXIS 21483, *10-11 (W.D. K.Y. Aug. 24, 2005) (opining that if the current FCRA statute of limitations applied, plaintiff's amended complaint alleging that her former employer violated the FCRA's disclosure requirements would have been timely).[3]

"One protection the FCRA affords consumers is its requirement that employers seeking to obtain a consumer report on a current or potential employee disclose that such a report 'may be obtained for employment purposes.'" *Burghy v. Dayton Racquet Club, Inc.,* 695 F. Supp. 2d 689, 695 (S.D. Ohio 2010) (quoting 1681b(b)(2)(A)); *see, also, Kelchner v. Sycamore Manor Health Ctr.,* 135 Fed. Appx. 499, 502 (3d Cir. 2005) (internal quotation marks omitted) (noting that the "requirement that an employer obtain authorization at any time before the report is procured is unambiguous"). In order for a disclosure to comply with the FCRA, the language of the disclosure must <u>clearly and conspicuously</u> notify a consumer that his or her consumer report may be obtained for employment purposes. *See, i.d.* at 696-700 (holding that the Dayton Racquet Club did not violate 1681b(b)(2)(A) because its disclosure form expressly stated that it would obtain the credit reports of certain employees from a consumer reporting agency, the form used bullet points to call attention to the disclosures, and the Plaintiff testified during her deposition that she was actually aware of the employment-related function of the consumer reports).

---

[3] In *Webb*, the plaintiff worked for the defendant on and off from July, 2001 until April, 2003. *2005 U.S. Dist. LEXIS 21483, at *2*. In February, 2004, plaintiff filed a complaint against defendant alleging that someone accessed her credit report from the employer's place of business in violation of the FCRA. *Id.* at *3. During discovery, plaintiff became aware that defendant had obtained her a copy of her criminal background report in July, 2001. *Id.* Plaintiff moved to amend her complaint to add a cause of action based on the July, 2001 incident. *Id.* Ultimately, the court held that the pre-amended version of 15 U.S.C. § 1681p applied and that, as a result, plaintiff's FCRA claim based on the July, 2001 violation was time-barred. *Id.* at *12-13. The court, however, held that had the current statute of limitations applied, plaintiff's claim would have been timely. *Id.*

Here, Vitran not only completely abdicated its obligations under the FCRA to furnish a clear and conspicuous disclosure or obtain valid authorization prior to furnishing a consumer report, but it failed to provide consumers any notice whatsoever that it would procure a copy of their criminal background report. Prior to March, 2009, this failure was systematic, rendering the violations undeniable as applied to applicants who sought employment from April 7, 2004 to April 7, 2007.

II.     Plaintiffs have shown good cause to file their Second Amended Class Action Complaint.

A district court's decision to modify its scheduling order to allow a late filing will not be reversed on appeal absent abuse of discretion. *Andretti v. Borla Performance Indus.,* 426 F.3d 824, 829-30 (6th Cir. 2005). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir. 2002).  Here, Plaintiffs diligently attempted to comply with the deadline for filing an amended complaint set forth in the Court's Case Management Order and, therefore, have satisfied the "good cause" standard.

Plaintiffs discovered Vitran's systematic failure to comply with the notice and disclosure requirements mandated by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq., after reviewing 1,501 application files, some of which <u>Vitran produced after the March 1, 2010 deadline for filing an amended pleading</u>.  Furthermore, Plaintiffs requested information five (5) months prior to the deadline regarding applicants who sought employment from April 7, 2004 to April 7, 2007.  Vitran did not produce this information.

Indeed, Vitran produced approximately 99% of its application files less than one month prior to this Court's deadline for filing an amended pleading. (Mot. in Opp. at 5).   Vitran

6

furnished the remaining files after the March 1, 2010 deadline. (Mot. in Opp. at 2, n.1). After reviewing these application files, Plaintiffs discovered that Vitran's FCRA violations were neither random nor sporadic. To the contrary, Vitran blatantly violated the rights of all individuals who submitted applications for employment prior to March, 2009.  Plaintiffs had no way of discerning such a pattern prior to reviewing the application files; files which – although requested in September, 2009 – were not provided until the eve of the deadline for filing an amended pleading.

Because Vitran failed to comply with the FCRA's notice and disclosure requirements prior to March, 2009, all individuals seeking employment prior to this date have no knowledge that Vitran violated their rights under the FCRA and, thus, their FCRA claims are not time-barred. Plaintiffs became aware of the basis for extending the Class Period through discovery that took place after the deadline for filing an amended pleading. *Compare, Leary v. Daeschner,* 349 F.3d 888, 904-905 (6th Cir. 2003) (holding that plaintiffs failed to demonstrate good cause to file a second amended complaint nearly *two years* after the deadline where plaintiffs sought to add a claim for money damages for the due process claims alleged in their original complaint).[4]

Furthermore, Plaintiffs requested information, which would have exposed Vitran's systematic FCRA violations sooner. Specifically, Plaintiffs requested:

> All documents pertaining to job applicants who applied in-person for positions with Vitran, PJax, or any other entity indentified in your response to Interrogatory No. 2 from April 7, 2004 through the present, including but not limited to applications for employment, inquires to past employers, applicant checklists, and criminal background reports pertaining to each applicant

****

---

[4] Vitran's reliance on *Leary* is misplaced for several reasons. First, the plaintiffs in that case moved to amend nearly two years after the deadline for filing amended pleadings and after the court had already granted three of defendant's motions for summary judgment. 349 F.3d at 907. Furthermore, unlike in this case, the amendments sought in *Leary* were not precipitated by the discovery of any additional information; but rather, plaintiffs were "obviously aware of the basis of the claim for many months." *Id.* at 908.

> All files pertaining to job applicants who applied via telephone, via fax, or via email for positions with Vitran, PJax, or any other entity identified in your response to Interrogatory No. 2 from April 7, 2004 through the present, including but not limited to applications for employment, inquires to past employers, applicant checklists, and criminal background reports pertaining to each job applicant. . . .

*See,* Plaintiffs' Exhibit A, Plaintiffs' First Set of Interrogatories and Request for Production of Documents at 10-12; *see also, id.* at 4.

Plaintiffs, therefore, have demonstrated good cause to modify the Court's Scheduling Order to permit Plaintiffs to file their Second Amended Class Action Complaint and vindicate the rights of thousands of individuals who remain unaware that their rights under the FCRA have been violated.

III.    Vitran will not be prejudiced should this Court grant Plaintiffs' Motion to Amend.

When determining whether to modify a scheduling order, "[a]nother relevant consideration is possible prejudice to the party opposing the modification." *Inge,* 281 F.3d at 625. Here, no prejudice will inure to Vitran should the Court modify its scheduling order to permit Plaintiffs to file their Second Amended Class Action Complaint. Plaintiffs are not moving to inject new claims into this litigation. Rather, Plaintiffs merely move to expand the number of Class Members aggrieved by Vitran's unlawful conduct; violations which Vitran has known, or should have known about. Thus, Vitran's reliance on the discovery and dispositive motion deadlines to demonstrate prejudice is disingenuous. Indeed, the only new issue raised by Plaintiffs' Second Amended Class Action Complaint is whether some individuals who applied for employment with Vitran from April 7, 2004 to April 7, 2007 discovered Vitran's FCRA violation if they received a notice from USIS that Vitran had ordered a copy of the applicant's consumer report and that this consumer report was being provided to Vitran. But, Vitran will

certainly be prepared to address this matter in a dispositive motion as it has already briefed the issue to support its futility of amendment argument.

Furthermore, granting Plaintiffs' Motion for Leave to File their Second Amended Class Action Complaint will not require Vitran to conduct additional discovery. With respect to producing application files, Vitran has already indicated that it does not have application files from April 7, 2004 to April 7, 2007 in its possession.  But USIS – the provider of consumer reports to Vitran during this period – can easily identify these individuals.[5]  Consequently, Vitran will not be prejudiced should the Court grant Plaintiffs' Motion for Leave to File their Second Amended Class Action Complaint.

The cases cited in Vitran's brief are entirely distinguishable. For example, in *Wade v. Knoxville Utils. Bd.,* the court held that the district court did not abuse its discretion by denying plaintiff's motion to amend his complaint where plaintiff, without providing any explanation for his year and a half delay in moving to amend, moved to add three entirely new causes of action after the defendant had already filed a motion for summary judgment on all claims alleged in the original complaint. 259 F. 3d 452, 459 (6th Cir. 2001). Moreover, unlike in the instant case, the *Wade* court emphasized that the defendant would have been significantly prejudiced if the court permitted the plaintiff to assert new claims:

> It is also apparent that significant discovery has been completed including more than 20 depositions. Obviously, some if not all of the depositions already taken would have to be supplemented to address the <u>multiple issues raised in the proposed amendments and other extensive and additional discovery would have to be undertaken as well.</u> In addition, defendant would have to prepare a defense for the newly asserted claims that likely would require securing new medical and expert witnesses.

---

[5] Plaintiffs recently issued a subpoena to USIS seeking the identity of Vitran applicants as early as April 7, 2004. USIS responded with a litany of objections and has not produced this information to date.

*Id* (emphasis added); *see also, Corning v. Nat'l Union Fire Ins. Co.,* 257 F.3d 484, 496-97 (6th Cir. 2001) (holding that the district court did not abuse its discretion when it denied a defendant's motion for leave to amend its answer and file a counterclaim almost three years after defendant filed its original answer where the motion asserted two new defenses one of which the Sixth Circuit had addressed in a previous ruling).

## IV.    Conclusion

Based on the foregoing, Plaintiffs respectfully request that this Court grant their Motion for Leave to file their Second Amended Class Action Complaint.

Respectfully submitted,

STUMPHAUZER, O'TOOLE, McLAUGHLIN,
McGLAMERY & LOUGHMAN CO., LPA

By:    /s/ Dennis M. O'Toole
       Dennis M. O'Toole (0003274)
       Anthony R. Pecora (0069660)
       Matthew A. Dooley (0081482)
       Attorneys for Plaintiff
       5455 Detroit Road
       Sheffield Village, Ohio  44054
       Telephone:    (440) 930-4001
       Facsimile:    (440) 934-7208
       Email:    dotoole@sheffieldlaw.com
                 apecora@sheffieldlaw.com
                 mdooley@sheffieldlaw.com

## <u>CERTIFICATE OF SERVICE</u>

This will certify that a copy of the foregoing Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Leave to File their Second Amended Class Action Complaint was filed electronically this 21st day of October, 2010.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or via regular mail.

/s/Dennis M. O'Toole
Dennis M. O'Toole

C:\Documents and Settings\kschaef\My Documents\Reply to Vitran's Opposition to Hall's Motion for Leave to File Second Amended Complaint final.docx