**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **THOMAS E. HALL, on Behalf of Himself and All Others Similarly Situated** | |
| Plaintiff, | DISTRICT JUDGE POLSTER |
| | CASE NO. 1:09-cv-00800 |
| vs. | |
| **VITRAN EXPRESS, INC.** | |
| Defendant. | |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF AMENDED PROPOSED CLASS SETTLEMENT, CERTIFICATION OF A CLASS FOR THE PURPOSES OF SETTLEMENT, AND APPROVAL OF FORM AND MANNER OF NOTICE**

Now come the parties, by and through counsel, and hereby move the Court pursuant to Federal Rule of Civil Procedure 23 for preliminary approval of the class settlement, certification of a class for the purposes of settlement, and approval of form and manner of notice.  A memorandum in support is attached hereto and incorporated herein.

Respectfully submitted,

STUMPHAUZER, O'TOOLE, McLAUGHLIN,
McGLAMERY & LOUGHMAN CO., LPA

By:     /s/ Dennis M. O'Toole
Dennis M. O'Toole (0003274)
Anthony R. Pecora (0069660)
Matthew A. Dooley (0081482)
5455 Detroit Road, Sheffield Village, Ohio  44054
Tel:          (440) 930-4001
Fax:         (440) 934-7208
Email:      dotoole@sheffieldlaw.com
               apecora@sheffieldlaw.com
               mdooley@sheffieldlaw.com

{2668945:}1

and

CONSUMER LITIGATION ASSOCIATES, P.A
Leonard A. Bennett (Va. Bar No. 37523)
12515 Warwick Boulevard
Newport News, Virginia 23606
Tel:            (757) 930-3660
Fax:            (757) 930-3662
Email:          lenbennett@clalegal.com
*Attorneys for Thomas E. Hall and the putative class*

and


MCDONALD HOPKINS, LLC

/s/ Tyler L. Mathews
William J. O'Neill (0029936)
Tyler L. Mathews (0063759)
600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114
Tel:            (216) 348-5400
Fax:            (216) 348-5474
E-mail:         woneill@mcdonaldhopkins.com
                tmathews@mcdonaldhopkins.com
*Attorneys for Defendant Vitran Express, Inc.*

## MEMORANDUM IN SUPPORT[1]

### STATEMENT OF FACTS

On April 7, 2009, Plaintiff Thomas E. Hall ("Plaintiff" or "Hall") commenced this litigation against Vitran Express, Inc. ("Defendant" or "Vitran") on behalf of himself and all other similarly situated individuals (collectively, "Class Members") alleging several violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681, *et seq.* Specifically, Hall alleged that Vitran violated 15 U.S.C. §§ 1681b(b)(2)(A)(i) and 1681b(b)(2)(A)(ii) by failing to provide Hall and other applicants a clear and conspicuous written disclosure in a document consisting solely of the disclosure to applicants and employees that a consumer report may be obtained for employment purposes and by failing to obtain valid authorization in writing from Hall and Class Members prior to procuring such a report for employment purposes. Further, Hall alleged that Vitran violated 15 U.S.C. §§ 1681b(b)(3)(A)(i) and 1681b(b)(3)(A)(ii) by failing to provide a copy of the consumer report used to make an employment decision to Hall and the Class Members and by failing to provide a copy of the summary of rights statement before taking adverse action that was based in whole or in part on that report. Finally, Hall alleged that Vitran violated 15 U.S.C. §§ 1681m(a)(2)(B) and 1681m(a)(3)(A) by failing to provide Hall and Class Members with oral, written or electronic notice that the consumer reporting agency did not make the decision to take adverse action and is unable to provide the consumer with the specific reason why the adverse action was taken and by failing to provide Hall and Class Members with such

---

[1] All defined terms shall have the same meanings they have in the Amended Stipulation of Settlement.

notice of the consumer's right to obtain within sixty (60) days a free copy of the consumer report regarding the consumer from the consumer reporting agency that prepared the report.

Following the October 2009 case management conference, Hall and Vitran (collectively, the "Parties") commenced discovery, during which Vitran produced approximately 1,500 application files including information regarding applicants from April 7, 2007 to approximately December 2009. On October 5, 2010, Hall moved to amend his complaint to extend the class period from two years to five years pursuant to 15 U.S.C. 1681p.  The Court granted his motion on October 29, 2010, and Hall filed his Second Amended Complaint on November 3, 2010.

## THE PROPOSED SETTLEMENT

During an all-day mediation conference held on November 30, 2010 with the Honorable Dan Aaron Polster, the Parties arrived at an agreed resolution of this matter on a class-wide basis.  The provisions of the agreement provided for cash disbursements to the class, a *cy pres* trust, and an attorney fee within the acceptable range for matters of this type.  The salient terms were as follows:

- Vitran agreed to pay a total of Two Million Dollars (the "Settlement Funds"), from which Class Members shall be paid as follows:

  o All individuals who applied for employment with Vitran from April 7, 2004 through March 13, 2009 shall receive a gross amount of $1,000.00 to be paid from the Settlement Funds;

  o All individuals who applied for employment with Vitran from April 7, 2004 through March 13, 2009 and did not receive pre-adverse action notice shall receive a gross amount of $1,000.00 to be paid from the

Settlement Funds;

    o   All individuals who applied for employment with Vitran from April 7, 2004 through March 13, 2009 and did not receive adverse action notice shall receive a gross amount of $1,000.00 to be paid from the Settlement Funds;

- Vitran shall not oppose Class Counsel's petition for attorney's fees for an amount not to exceed thirty percent (30%) of the Settlement Funds;

- The cost of notice and administration of the settlement shall be paid from the Settlement Funds;

- Settlement checks that remained uncashed after ninety (90) days shall be distributed to two *cy pres* funds selected by Class Counsel subject to the Court's approval.

On March 2, 2011, the Court granted preliminary approval of the proposed settlement outlined above.  During the course of proceeding with notice to Class Members, the Parties jointly requested that HireRight, as the provider of consumer reports to Vitran, identify all individuals who were the subject of such consumer reports during the Class Period.  On March 8, 2011, HireRight provided a spreadsheet supplementing data provided earlier in the litigation.  Specifically, this new data identified approximately 1,500 individuals who were the subject of a consumer report obtained by Vitran between April 2004 and April 2007.  This new data increased the size of the Preliminary Settlement Case to approximately 2,936 individuals.

During mediation, Vitran estimated that approximately 500 individuals sought employment between April 2004 and April 2007.  Because of the increase in the class size, the

Parties engaged in further negotiations to adequately compensate the Preliminary Settlement Class.  These continued negotiations were overseen by the Court, and ultimately led to a revised agreement as follows:

- Vitran shall pay the sum of Two Million Six Hundred Thousand Dollars (the "New Settlement Funds"), from which Class Members shall be paid as follows:

  o All individuals who applied for employment with Vitran from April 7, 2004 through March 13, 2009 shall receive a gross amount of $800.00 to be paid from the New Settlement Funds;

  o All individuals who applied for employment with Vitran from April 7, 2004 through March 13, 2009 and did not receive pre-adverse action notice shall receive a gross amount of $1,000.00 to be paid from the New Settlement Funds;

  o All individuals who applied for employment with Vitran from April 7, 2004 through March 13, 2009 and did not receive adverse action notice shall receive a gross amount of $1,000.00 to be paid from the New Settlement Funds;

- Vitran shall not oppose Class Counsel's petition for attorney's fees for an amount not to exceed thirty percent (30%) of the New Settlement Funds;

- The cost of notice and administration of the settlement shall be paid from the New Settlement Funds;

- The cash funds from any Settlement checks that remain uncashed after ninety (90) days shall be distributed as follows:

    ○   Vitran shall receive a sum which equals the greater of $120,000.00 or twenty-three percent (23%) of the uncashed checks net of fees and expenses.  Should the amount of uncashed checks be less than $120,000.00, Class Counsel shall absorb the difference to be paid to Vitran from attorneys' fees, not to exceed $120,000.00.

    ○   Any remaining sums shall be distributed to two *cy pres* funds selected by Class Counsel subject to the Court's approval.

## CLASS CERTIFICATION

Federal Rule of Civil Procedure 23(a) requires that in order for a class action to proceed it must be demonstrated that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and, (4) The representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23.  This rule authorizes certification if the four prerequisites of Rule 23(a) are met, and the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974).

Inquiry into the merits of the case is forbidden in ruling on a motion for class certification.  *Eisen, supra* at 177-78.  In addition, the Court should resolve any doubt regarding the propriety of certification in favor of allowing certification.  *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985), *cert. denied*, 474 U.S. 946 (1985).  *Esplin v. Hirschi*, 402 F.2d 94, 101

(10th Cir. 1968), *cert. denied*, 394 U.S. 928 (1968).  *In re Data Corp. Securities Litigation*, 116 F.R.D. 216 (D. Minn. 1986); *In re Folding Cartons Antitrust Litigation*, 75 F.R.D. 727 (N.D. Ill. 1977).  See also, *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321 (W.D. Mich. 2000) at 327.

This policy of resolving doubts in favor of class certification furthers the salutary purpose of compensating victims of widespread wrong.  See generally, *Esplin*, *supra*.  Further, "[t]he procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense." *Sterling v Velsicol Chemical Corporation*, 855 F.2d 1188, 1196 (6th Cir. 1988).  "Rule 23 must be liberally interpreted" and read to "favor maintenance of class actions." *King v. Kansas City Southern Industries*, 519 F.2d 20, 25-26 (7th Cir. 1975).

District courts must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class.  *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372 (1982).  While the Court must conduct a rigorous analysis as to whether the standards of Rule 23 are met, the elements of typicality, commonality, and adequacy of representation tend to merge. *Mitchell v. Kentucky Dep't of Corrections,* 2000 U.S. App. LEXIS 26160 (6th Cir. October 12, 2000, Filed); see also *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998) (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157, n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)); *Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 362 (4th Cir.  2004). Furthermore, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings

before coming to rest on the certification question." *Id.* at 160, 2372.

At the same time, Courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application [that] will in the particular case best serve the ends of justice for affected parties and promote judicial efficiency." *In re A.H. Robins Company, Incorporated*, 880 F.2d 709, 740 (4th Cir.1989), cert denied sub nom. *Anderson v. Aetna Casualty and Surety Company*, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989) (internal quotations marks omitted).  See also *Jeffreys v. Communications Workers*, 212 F.R.D. 320, 322 (E.D.Va.2003); *Morris v. Wachovia Securities, Inc.,* 223 F.R.D. 284, 291 (E.D. Va. 2004).

## A.    Numerosity

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable."  *Violette v. P. A. Days, Inc.*, 214 F.R.D. 207, 212 (S.D. Ohio 2003); see also *Talbott v. GC Servs., Ltd. Pshp.*, 191 F.R.D. 99, 102 (W.D. Va. 2000).  *See Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1312 (4th Cir. 1978).  However, "impracticable does not mean impossible."  *Rabidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993).  "When the class is large, numbers alone are dispositive . . . ."  *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986).  There is no set minimum number of potential class members that fulfills the numerosity requirement. See *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006); see also *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)); see also *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F. Supp. 1404, 1407-08 (D. Md. 1984) (stating that "[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be

impractical"). The fact that the precise number of class members cannot be determined at the certification stage does not preclude class certification. See *Haywood v. Barnes*, 109 F.R.D. 568, 576 (E.D.N.C. 1986). The court may rely on reasonable estimates of the number of class members. *Id.* However, where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 class members sufficient).

At this time, the Parties estimate that the class consists of approximately 2,936 applicants who did not receive a stand-alone disclosure that a consumer report would be obtained for employment purposes, together with a sub-class of 127 applicants who did not receive pre-adverse action notice, and a sub-class of 124 applicants who did not receive adverse action notice. The sheer size of this class is sufficiently large to determine that numerosity has been satisfied and joinder of these individuals' claims is not possible. As such, the first prong of the certification test has been met with regard to the class to be represented under the FCRA.

### B. Common Questions of Law or Fact

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that there be a common question of law or fact. Commonality requires that there be at least one question of law or fact common to the members of the class. *In re American Medical Sys.,* 75 F.3d 1069, 1080 (6th Cir. 1996); see also *Jeffreys v. Communications Workers*, 212 F.R.D. 320, 322 (E.D. Va. 2003); *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992), aff'd 6 F.3d 177 (4th Cir. 1993) (stating that commonality "does not require that all, or even most, issues be common, nor that common issues predominate, but only that common issues exist").

Commonality is a liberal standard, and the fact that there are some factual variances in

individual grievances among class members does not defeat commonality. *Jeffreys*, 212 F.R.D. at 322.  Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members.  *McGlothlin v. Connors*, 142 F.R.D. 626 (W.D. Va. 1992).  The commonality requirement requires that the classes present dispositive questions which will propel the case through the system.  See *Stott v. Haworth*, 916 F.2d 134, 145 (4th Cir. 1990); *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).  The typicality and commonality requirements ensure that only those plaintiffs who can advance the same factual and legal arguments will be grouped together as a class.  *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998); *Fisher v. Virginia Elec. and Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003).

The class to be represented consists of those individuals who – between April 7, 2004 and March 13, 2009 – were the subject of criminal background reports obtained by Vitran for employment purposes.  Further, the class consists of two subclasses: (1) individuals who did not receive pre-adverse action notice from Vitran upon Vitran's initial determination to decline employment based upon the result of a criminal background report, and (2) individuals who did not receive adverse action notice from Vitran upon Vitran's final determination to decline employment based upon the result of a criminal background report.  Each of these individuals was entitled to a clear, conspicuous, and stand-alone disclosure that Vitran intended to procure a criminal background report for employment purposes.  Further, upon Vitran's initial determination to decline employment, these individuals were entitled to receive a copy of their criminal background report and a copy of the summary of rights as required by the FCRA prior to Vitran taking adverse action which was based on or in part on the criminal background or

other consumer report used for employment screening.  Last, upon Vitran's final determination to decline employment, these individuals were not provided with oral, written or electronic notice by Vitran that the consumer reporting agency ("CRA") which issued a criminal background report or other consumer report on the consumer did not make the decision to take adverse action, and that the CRA is unable to provide the consumer with the specific reasons why the adverse action was taken.  Vitran further failed to provide these individuals with oral, written or electronic notice to the consumer of his or her right to obtain, within 60 days, a free copy of the consumer report regarding the consumer from the CRA which prepared the report.

These classes of individuals share predominant questions of law under the above-described common facts, which predominate over all individual issues and clearly propel this litigation forward to a resolution.  As such, the commonality prong of Rule 23 is satisfied.

### C.    Typical Claims

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that the claims of the named plaintiff be typical of the claims of the class.  It has been noted that "the premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class."  *Sprague v. General Motors Corporation*, 133 F.3d 388, 399 (6th Cir. 1998); see also *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 340 (4th Cir. 1998) (quoting *Sprague v. General Motors Corporation*, 133 F.3d 388, 399 (6th Cir.1998)).  The typicality requirement, so explained, tends to merge with the commonality requirement. *General Telephone Company of the Southwest v. Falcon* , 457 U.S. 147, 158 n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).  Nonetheless, the typicality requirement remains its own separate inquiry *Broussard*, *supra* at 340, and a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Systems, Inc.*,

255 F.3d 138, 146 (4th  Cir. 2001).   The typicality requirement is met when class representatives

show that: (1) "their interests are squarely aligned with the interests of the class members;" and

(2) "their claims arise from the same events or course of conduct and are premised on the same

legal theories as the claims of the class members." *Fisher v. Virginia Electric and Power

Company*, 217 F.R.D. 201, 217 (E.D. Va. 2003) (citing  *Jeffreys v. Communications Workers*,

212 F.R.D. 320, 322 (E.D. Va. 2003); *Morris v. Wachovia Securities, Inc.*, 223 F.R.D. 284, 295

(E.D. Va. 2004).

In this case, there is only a single claim for decision by the Court for Hall as well as the

class.  The scope of Hall's claims is coextensive with those of the class; his claims are *identical*

to those of the proposed class members and his interests are squarely aligned with them.   In

particular, Hall's claims arise out of the exact same practice which guided Vitran's actions in the

course of obtaining and using consumer reports to make employment decisions.

While  the  FCRA  mandates  that  job  applicants  receive  a  stand-alone,  clear,  and

conspicuous disclosure that a consumer report would be obtained for employment purposes, no

such disclosure was provided to Hall or the class members.   Further, neither Hall nor other

members  of  the  class  received  mandatory  pre-adverse  and  adverse  action  notification  upon

Vitran's decision to decline employment based upon the results of a consumer report.   There is

no difference between the claims possessed by the other Class Members and those possessed by

Hall.  As such, Hall's claims are *typical* of the common claims held by the class, and Rule 23's

commonality requirement has been met as to the Class to be certified.

### D.    Adequate Representation

The final component of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This prerequisite is met when: "(1) the named plaintiff[s] [have] interests common with, and not antagonistic to, the Class' interests; and (2) the plaintiff[s'] attorney is qualified, experienced and generally able to conduct the litigation." *In re Southeast Hotel Properties Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 607 (W.D.N.C. 1993); *Wiseman v. First Citizens Bank & Trust Co.*, 212 F.R.D. 482, 489 (W.D.N.C. 2003). A class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)).

The underlying premise of a class action is that litigation by representative parties adjudicates the rights of all class members, and therefore, basic due process requires that named plaintiffs possess undivided loyalties to absent class members. *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 338 (4th Cir. 1998) (citing e.g., *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785, 796 (3d Cir. 1995). Representation will be considered "adequate" if the class representatives are not disqualified by reason of interests antagonistic to the rest of the class. *Ostrof v. State Farm Mutual Auto. Insurance Co.*, 200 F.R.D. 521, 530 (D. Md. 2001). In a complex lawsuit, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative. *Gunnells v. Healthplan Services, Inc.,* 348 F.3d 417, 430 (4th Cir. 2003).

Vitran has the burden of proving the representation is inadequate. *In re Southeast Hotel Properties Ltd. P'ship Investor Litig.*, *supra* at 607. To defeat the adequacy requirement of Rule

23, a conflict "must be more than merely speculative or hypothetical." *Gunnells v. Healthplan Services, Inc.,* 348 F.3d 417, 430 (4th Cir. 2003) (citing 5 Moore's Federal Practice § 23.25[4][b][ii] (2002)).

In this case, Vitran does not challenge the adequacy of representation.  Hall understands and accepts his responsibilities as class representative and has no interests which are adverse to either of the classes.   His interests are coincident with the general interests of the classes. Further, Hall and the class seek statutory damages as the result of Vitran's failure to provide disclosures and notices under the FCRA.  Given the identical nature of the claims between Hall and the other Class Members, there is no potential for conflicting interests in this action; there is no disagreement between Hall's interests and those of the class.

At the same time, Hall's counsel are experienced in both class action litigation  and are competent to represent the interests of the class and have no apparent conflict.  Accordingly, the class to be represented meets the adequacy prong of Rule 23.

### E.     Rule 23(B)(3) Factors

#### 1.     Predominance

Rule 23(b)(3) of the Federal Rules of Civil Procedure requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. *Chamberlain v. American Tobacco Co.*, 1999 U.S. Dist. LEXIS 5843 (N.D. Ohio Apr. 12, 1999); see also *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 142 (4th Cir. 2001); *Simmons v. Poe*, 47 F.3d 1370, 1380 (4th Cir. 1995). The predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004) (citing  *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)); *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 142 (4th Cir. 2001). This criterion is normally satisfied when there is an essential common factual link between all class members and the defendants for which the law provides a remedy. *Talbott v. GC Servs., Ltd. Pshp.*, *supra*, 191 F.R.D. at 105 citing *Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974). "Predominance is a test readily met in certain cases alleging consumer . . . fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2249, 2250, 138 L. Ed. 2d 689 (1997).

In this case, the "common nucleus of operative fact" is that all Class Members, by definition, were not provided with a stand-alone, clear, and conspicuous disclosure indicating that a criminal background report would be obtained for employment purposes.  Further, members of the sub-classes did not receive pre-adverse action notice and adverse action notice upon Vitran's decision to decline employment based upon the results of the report.  In this case, with statutory damages arising under identical circumstances for each class member, there are almost no individual issues which arise.  Rather, the issues which predominate relate exclusively to whether: (1) Vitran's conduct was uniform as to the class members, and (2) the relative culpability of Vitran's conduct.  Indeed, the certification of this class requires no individualized inquiry into damages.  These class-wide issues will predominate and propel this litigation.  As such, the Class meets the predominance standard set forth in Rule 23(b)(3).

## 2.    Superiority

Finally, the Court must determine whether a class action be superior to other methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23(b)(3).  *Amchem Prods. v. Windsor,* 521 U.S. 591, 615 (1997)*; see also Lienhart v. Dryvit Systems, Inc.*, 255 F.3d

138, 142 (4th Cir. 2001);  *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 713 (4th Cir. 1989).  The

factors to be considered in determining the superiority of the class mechanism are: 1) the interest

in controlling individual prosecutions; 2) the existence of other related litigation; 3) the

desirability of concentrating the litigation in the forum; and 4) manageability.  *Pfaff v. Whole*

*Foods Mkt. Group, Inc.,* 2010 U.S. Dist. LEXIS 104784 (N.D. Ohio Sept. 29, 2010)*; see also*

*Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *Newsome v.*

*Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).

Efficiency is the primary focus in determining whether the class action is the superior

method for resolving the controversy presented.  *Talbott*, 191 F.R.D. at 106 citing *Eovaldi v.*

*First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972).    In examining these factors, it is proper for a

court to consider the "inability of the poor or uninformed to enforce their rights, and the

improbability that large numbers of class members would possess the initiative to litigate

individually." *Triad v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164 (7th Cir. 1974).  "In

determining superiority, courts also consider the anticipated amount of recovery for each

plaintiff.  Class actions are particularly appropriate where multiple lawsuits would not be

justified because of the small amount of money sought by the individual plaintiffs."  *See*

*Advisory Committee Note* to 1996 Amendment to Rule 23.  Thus, the class mechanism permits a

large group of claimants to have their claims adjudicated in a single lawsuit.  In so doing,

certification enables the court to manage a large number of small and medium sized claims

where the awesome costs of discovery and trial could easily prevent any adjudication of those

claims and preclude any relief to the class.  See *Lozada v Dale Baker Oldsmobile Inc.*, 197

F.R.D. 321, 332-333 (W.D. Mich. 2000).

Hall seeks only statutory damages per violation of no less than $100 and no more than $1,000.  In sum, the amount in controversy for any individual claimant in this class is small, and when compared to the costs of discovery and litigation, this potential recovery pales in comparison.  As such, none of the individual claims posses any controlling interest in the litigation.  Likewise, the absence of any competing classes or other individual claims suggests that without the certification of this case as a class, it is unlikely that the class members would obtain any form of relief.  *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997).  In short, unless the Court certifies this class, it is highly probable that the class members will receive no relief of any kind.

At the same time, there are no notice or individualized damage issues which would render the class unmanageable.  Rather, the identity of class members is readily obtainable from HireRight Solutions, Inc., the consumer reporting agency that provided criminal background reports to Vitran. Given these facts, the class mechanism stands as a clearly superior mechanism for resolving the claims of the class members.

## PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT

Prior to permitting Class Counsel to notify the class of the proposed settlement, the Court must determine whether the proposed settlement meets the requirements of Rule 23.   In reviewing a proposed settlement, the Court must determine whether the proposed settlement was the product of legitimate, good faith negotiation, such that notification of the class is justified:

As part of Rule 23(e)'s "fairness, reasonableness, and adequacy" inquiry the court must first determine whether the terms of the proposed settlement warrant

"preliminary approval." See Fed. R. Civ. P. 23(e)(1)(B)-(C).  Preliminary approval is a two-step process. See *In re IPO Litig.*, 226 F.R.D. at 191; *In re Nasdaq Antitrust Litig.*, 176 F.R.D. at 102 (citing Fed. R. Civ. P. 23(e); Manual for Complex Litigation (Third) § 30.41 (1995)). First, the court "make[s] a preliminary evaluation of the fairness of the settlement." *In re Nasdaq Antitrust Litig.*, 176 F.R.D. at 102. Thus, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representative or segments of the class and falls within the reasonable range of approval, preliminary approval is granted." *Id.* (citing Manual for Complex Litigation (Third) § 30.41 (1995)); accord *In re IPO Litig.*, 226 F.R.D. at 191.FN7 Upon preliminary approval, the court "must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *In re IPO Litig.*, 226 F.R.D. at 191. At the fairness hearing, "[c]lass members (and non-settling defendants whose rights may be affected by the proposed settlement) then have an opportunity to present their views of the proposed settlement, and the parties may present arguments and evidence for and against the terms, before the court makes a final determination as to whether the proposed settlement is 'fair reasonable, and adequate.'" *Id.* (citing Manual for Complex Litigation (Fourth) § 21.632-21.635 (2004)).

*Bourlas v. Davis Law Associates*, 237 F.R.D. 345 (E.D.N.Y. 2006). The preliminary approval process should not constitute a trial of the case on the merits, rather only and determination that the settlement is not the result of overreaching or collusion:

In making a preliminary assessment of the fairness of the proposed settlement agreement, the Court's "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983).  A preliminary fairness assessment "is not to be turned into a trial or rehearsal for trial on the merits," for "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* Rather, the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation. *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982).

* * *

   As part of this evaluation, the Court may not second guess the settlement terms. *See Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980) ("[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel"); *Officers for Justice*, 688 F.2d at 625 ("[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators"). Moreover, when a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair. *Vukovich*, 720 F.2d at 923; see *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) ("[i]n general, a settlement arrived at after genuine arm's length bargaining may be presumed to be fair"); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997) ("[s]ignificant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class' ") (internal citations omitted).

*In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. 330 (N.D. Ohio 2001). Thus, so long as the class appears to be a resolution of a dispute through a legitimate adversarial process, and the result appears fair and reasonable on its face, the Court should grant preliminary approval and order notice to the class. See also *Romstadt v. Apple Computer, Inc.*, 948 F. Supp. 701 (N.D. Ohio 1996).

   Here, the proposed settlement was the result of two years of litigation culminating with an all-day settlement conference before the Honorable Dan Aaron Polster together with extended discussions between counsel with oversight from the Court. More importantly, the proposed settlement is fair and reasonable as each of the class members will receive the maximum statutory damages allowed by law. At the same time, a thirty-percent (30%) fee for Class Counsel falls well within the range of acceptable fee awards as acknowledged by prevailing case law. The parties therefore request that the Court grant preliminary approval of the proposed settlement and direct Counsel to implement its provision such that the matter may be scheduled for a fairness hearing before the Court.

CONCLUSION

The proposed classes meet the requirements of Rule 23(a) as well as Rule 23(b)(3).  Mr.

Hall, with Vitran's consent, respectfully requests that the Court certify this action as a class

action, preliminarily approve the proposed settlement of this matter as set forth in the Stipulation

of Settlement (Doc. 35) together with the manner and form of notice provided for therein.

Respectfully submitted,

STUMPHAUZER, O'TOOLE, McLAUGHLIN,
McGLAMERY & LOUGHMAN CO., LPA

By:     /s/ Dennis M. O'Toole                              
        Dennis M. O'Toole (0003274)
        Anthony R. Pecora (0069660)
        Matthew A. Dooley (0081482)
        5455 Detroit Road
        Sheffield Village, Ohio  44054
        Tel:          (440) 930-4001
        Fax:          (440) 934-7208
        Email:        dotoole@sheffieldlaw.com
                      apecora@sheffieldlaw.com
                      mdooley@sheffieldlaw.com


        and


        CONSUMER LITIGATION ASSOCIATES, P.A
        Leonard A. Bennett (Va. Bar No. 37523)
        12515 Warwick Boulevard
        Newport News, Virginia 23606
        Tel:          (757) 930-3660
        Fax:          (757) 930-3662
        Email:        lenbennett@clalegal.com
        *Attorneys for Thomas E. Hall and the putative class*


        and


        McDONALD HOPKINS, LLC

{2668945:}21

/s/ Tyler L. Mathews
William J. O'Neill (0029936)
Tyler L. Mathews (0063759)
600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114
Tel:          (216) 348-5400
Fax:          (216) 348-5474
E-mail:       woneill@mcdonaldhopkins.com
              tmathews@mcdonaldhopkins.com
*Attorneys for Defendant Vitran Express, Inc.*


## CERTIFICATE OF SERVICE

This will certify that a copy of the foregoing Joint Motion for Preliminary Approval of the Class Settlement, Certification of a Class for the Purposes of Settlement, and Approval of Form and Manner of Notice was filed electronically this 6th day of April, 2011.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or via regular mail.

/s/Dennis M. O'Toole
Dennis M. O'Toole

G:\25\25747-1\Joint Motion Brief In Support (Final).Docx