**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **THOMAS E. HALL, on Behalf of Himself and All Others Similarly Situated**<br><br>Plaintiff,<br><br>vs.<br><br>**VITRAN EXPRESS, INC.**<br>Defendant. | CASE NO. 1:09-cv-00800<br><br><br>UNITED STATES DISTRICT JUDGE<br>DAN AARON POLSTER |

**JOINT MOTION FOR ORDER GRANTING APPROVAL OF CLASS ACTION SETTLEMENT, AN AWARD OF INCENTIVE PAYMENTS, ATTORNEYS FEES AND REIMBURSEMENT OF EXPENSES**

Plaintiffs, Thomas E. Hall and the putative class and Defendant, Vitran Express, Inc. jointly move this Court for an Order approving the April 19, 2011 Stipulation of Settlement as fair, reasonable and adequate, and authorizing disbursement of the Settlement Fund to the Class Members who have not opted out of said Settlement.

A Memorandum in Support is attached hereto and incorporated herein.

Respectfully submitted,
STUMPHAUZER, O'TOOLE, McLAUGHLIN,
McGLAMERY & LOUGHMAN CO., LPA

By:   /s/ Dennis M. O'Toole
       Dennis M. O'Toole (0003274)
       Anthony R. Pecora (0069660)
       Matthew A. Dooley (0081482)
       5455 Detroit Road, Sheffield Village, Ohio  44054
       Tel:     (440) 930-4001
       Fax:    (440) 934-7208
       Email:   dotoole@sheffieldlaw.com
                apecora@sheffieldlaw.com
                mdooley@sheffieldlaw.com
       and

CONSUMER LITIGATION ASSOCIATES, P.A

/s/ Leonard A. Bennett
Leonard A. Bennett (Va. Bar No. 37523)
12515 Warwick Boulevard
Newport News, Virginia 23606
Tel:          (757) 930-3660
Fax:          (757) 930-3662
Email:        lenbennett@clalegal.com
*Counsel for Thomas E. Hall and the putative class*


and

MCDONALD HOPKINS, LLC
/s/ Tyler L. Mathews
William J. O'Neill (0029936)
Tyler L. Mathews (0063759)
600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114
Tel:          (216) 348-5400
Fax:          (216) 348-5474
E-mail:       woneill@mcdonaldhopkins.com
              tmathews@mcdonaldhopkins.com
*Counsel for Defendant Vitran Express, Inc.*

# Table of Contents

I.     BACKGROUND ............................................................................................. 4

II.    THE PROPOSED SETTLEMENT ................................................................ 5

III.   ARGUMENT ................................................................................................. 7

A.    The Settlement Approval Procedure ................................................................ 7

B.    Factors to be Considered by the Court ............................................................ 8

C.    The Settlement is fair, adequate and reasonable as a whole. ....................... 10

    1.    There is no risk of fraud or collusion. ...................................................... 10

    2.    The Complexity, Expense and Likely Duration of Continued Litigation. .............. 11

    3.    The Amount of Discovery Conducted by the Parties ................................. 12

    4.    The Likelihood of Success on the Merits .................................................. 12

    5.    The Opinions of Class Counsel and Class Representatives ....................... 14

    6.    The Reaction of Absent Class Members .................................................... 14

    7.    The Public Interest ................................................................................... 15

D.    Notice to the Class was reasonable and satisfies due process. ...................... 15

E.    The class satisfies the requirements for certification under Fed. R. Civ. P. 23 ......... 17

F.  The Court should approve the request for an award of incentive payments, attorneys' fees and reimbursement of expenses. ........................................................... 20

    1.    The Court should award an incentive payment to the Class Representative ............. 20

    2.    The Court should award attorneys' fees based upon a percentage of the common fund .......................................................................................... 20

IV.   CONCLUSION ........................................................................................... 22

## I.     BACKGROUND

On April 7, 2009, Plaintiff Thomas E. Hall ("Plaintiff" or "Hall") commenced this litigation against Vitran Express, Inc. ("Defendant" or "Vitran") on behalf of himself and all other similarly situated individuals (collectively, "Class Members") alleging several violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681, *et seq*.  Specifically, Hall alleged that Vitran violated 15 U.S.C. §§ 1681b(b)(2)(A)(i) and 1681b(b)(2)(A)(ii) by failing to provide Hall and other applicants a clear and conspicuous written disclosure in a document consisting solely of the disclosure to applicants and employees that a consumer report may be obtained for employment purposes and by failing to obtain valid authorization in writing from Hall and Class Members prior to procuring such a report for employment purposes. Further, Hall alleged that Vitran violated 15 U.S.C. §§ 1681b(b)(3)(A)(i) and 1681b(b)(3)(A)(ii) by failing to provide a copy of the consumer report used to make an employment decision to Hall and the Class Members and by failing to provide a copy of the summary of rights statement before taking adverse action that was based in whole or in part on that report. Finally, Hall alleged that Vitran violated 15 U.S.C. §§ 1681m(a)(2)(B) and 1681m(a)(3)(A) by failing to provide Hall and Class Members with oral, written or electronic notice that the consumer reporting agency did not make the decision to take adverse action and is unable to provide the consumer with the specific reason why the adverse action was taken and by failing to provide Hall and Class Members with such notice of the consumer's right to obtain within sixty (60) days a free copy of the consumer report regarding the consumer from the consumer reporting agency that prepared the report.

Following the October 2009 case management conference, Hall and Vitran (collectively, the "Parties") commenced discovery, during which Vitran produced approximately 1,500 application files comprised of almost 40,000 pages of information regarding applicants from

April 7, 2007 to approximately December 2009. On October 5, 2010, Hall moved to amend his complaint to extend the class period from two years to five years pursuant to 15 U.S.C. 1681p. The Court granted his motion on October 29, 2010, and Hall filed his Second Amended Complaint on November 3, 2010.

## II.    THE PROPOSED SETTLEMENT

During an all-day mediation conference held on November 30, 2010 with the Honorable Dan Aaron Polster, the Parties reached an initial resolution of this matter on a class-wide basis. The provisions of the agreement provided for cash disbursements to the class, a *cy pres* trust, and an attorney's fee within the acceptable range for matters of this type.  The salient terms were as follows:

- Vitran agreed to pay a total of Two Million Dollars (the "Settlement Funds"), from which Class Members shall be paid as follows:

  - All individuals who applied for employment with Vitran from April 7, 2004 through March 13, 2009 shall receive a gross amount of $1,000.00 to be paid from the Settlement Funds;

  - All individuals who applied for employment with Vitran from April 7, 2004 through March 13, 2009 and did not receive pre-adverse action notice shall receive a gross amount of $1,000.00 to be paid from the Settlement Funds; and

  - All individuals who applied for employment with Vitran from April 7, 2004 through March 13, 2009 and did not receive adverse action notice shall receive a gross amount of $1,000.00 to be paid from the Settlement Funds.

- Vitran shall not oppose Class Counsel's petition for attorney's fees for an amount not to exceed thirty percent (30%) of the Settlement Funds;

- The cost of notice and administration of the settlement shall be paid from the Settlement Funds; and

- Settlement checks that remained uncashed after ninety (90) days shall be

distributed to two *cy pres* funds selected by Class Counsel subject to the Court's approval.

On March 2, 2011, the Court granted preliminary approval of the proposed settlement outlined above.  During the course of proceeding with notice to Class Members, the Parties jointly requested that HireRight Solutions, Inc., as the provider of consumer reports to Vitran, identify all individuals who were the subject of such consumer reports during the Class Period. On March 8, 2011, HireRight provided a spreadsheet supplementing data provided earlier in the litigation.  This new data identified approximately 1,500 individuals who were the subject of a consumer report obtained by Vitran between April 2004 and April 2007, and thus increased the size of the Preliminary Settlement Case to include approximately 2,936 individuals.

During mediation in November 2010, Vitran had estimated that only 500 individuals sought employment between April 2004 and April 2007.  Because of the increase in the class size, the Parties engaged in further negotiations to adequately compensate the Preliminary Settlement Class.  These continued negotiations were overseen by the Court, and ultimately led to a revised agreement as follows:

- Vitran shall pay the sum of Two Million Six Hundred Thousand Dollars (the "New Settlement Funds"), from which Class Members shall be paid as follows:

    - All individuals who applied for employment with Vitran from April 7, 2004 through March 13, 2009 shall receive a gross amount of $800.00 to be paid from the New Settlement Funds;

    - All individuals who applied for employment with Vitran from April 7, 2004 through March 13, 2009 and did not receive pre-adverse action notice shall receive a gross amount of $1,000.00 to be paid from the New Settlement Funds; and

    - All individuals who applied for employment with Vitran from April 7, 2004 through March 13, 2009 and did not receive adverse action notice shall receive a gross amount of $1,000.00 to be paid from the New Settlement Funds.

- Vitran shall not oppose Class Counsel's petition for attorney's fees for an amount not to exceed thirty percent (30%) of the New Settlement Funds;

- The cost of notice and administration of the settlement shall be paid from the New Settlement Funds; and

- The cash funds from any Settlement checks that remain uncashed after ninety (90) days shall be distributed as follows:

  - Vitran shall receive a sum which equals the greater of $120,000.00 or twenty-three percent (23%) of the uncashed checks net of fees and expenses. Should the amount of uncashed checks be less than $120,000.00, Class Counsel shall absorb the difference to be paid to Vitran from attorneys' fees, not to exceed $120,000.00; and

  - Any remaining sums shall be distributed to two *cy pres* funds selected by Class Counsel subject to the Court's approval.

## III.    ARGUMENT

### A.    The Settlement Approval Procedure

Settlement is favored, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, costs and rigors of prolonged litigation. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise."). When evaluating settlements such as this one, courts have recognized that complex litigation is "notoriously difficult and unpredictable." *Granada Investments, Inc. v. DWG Corp.* 962 F.2d 1203, 1205 (6th Cir. 1992) quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). "Absent evidence of fraud or collusion, such settlements are not to be trifled with." *Granada*, 962 F.2d at 1205.

When the settling parties propose to resolve the claims of a certified class through settlement, they must obtain the Court's approval. *See* Fed.R.Civ.P. 23(e)(1)(A). Federal Rule of Civil Procedure 23(e) provides, in part,

> The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, of compromise is fair, reasonable and adequate.

The three-step process for approval of class action settlements in federal courts is described in the *Manual for Complex Litigation* §§ 21.632-635 (4th ed. 2004) ("*Manual*"):

1.     Preliminary approval of the proposed settlement at an informal hearing;

2.     Dissemination of mailed and/or published notice of the settlement to all affected Class members; and

3.     A "formal fairness hearing", or final approval hearing, at which *class members* may be heard regarding the settlement, and at which presentations concerning the fairness, adequacy, and reasonableness of the settlement is presented.

See also *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983).  Here, the first two steps have been completed and the Court must now determine whether the settlement is fair, reasonable and adequate.

B.     Factors to be Considered by the Court

In evaluating whether a class action settlement is fair, reasonable and adequate, the trial court should consider the following factors: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Granada*, 962 F.2d at 1205; *Vukovich*, 720 F.2d at 922-23. A settlement is "presumptively reasonable" once preliminary approval is entered and "[a]n individual who objects, consequently, has a heavy

burden of demonstrating that the [settlement] is unreasonable." *Bronson v. Bd. of Education*, 604 F.Supp. 68, 71-72 (S.D. Ohio 1984).

Additionally, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Sixth Circuit has held:

> Our task is not to decide whether one side is right or even whether one side has the better of these arguments. Otherwise we would be compelled to defeat the purpose of a settlement in order to approve a settlement. The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement.

*Internat'l Union, United Auto, Aerospace, and Implement Workers of America v. General Motors Corp.*, 477 F.3d 615, 632 (6th Cir. 2007). In its evaluation, the trial court has "wide discretion." *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978). Further, the Sixth Circuit has explained,

> [N]o court of appeals, to our knowledge, has demanded that district courts invariably conduct a full evidentiary hearing with live testimony and cross-examination before approving a settlement. Our court, and several others, have instead deferred to the district court's traditionally broad discretion over the evidence it considers when reviewing a proposed class action settlement.

*UAW v. GMC*, 497 F.3d 615, 636 (6th Cir. 2007); *Officers for Justice*, 688 F.2d at 625 (fairness hearing should not be turned into a trial or rehearsal for trial on the merits).

C.     The Settlement is fair, adequate and reasonable as a whole.

1.     **There is no risk of fraud or collusion.**

This action was adversarial from its inception and throughout the settlement stages; settlement was only reached after intense motion practice, tens of thousands of pages of document review lasting over a year and many days of negotiation.  The scope of the class size and resulting gross settlement fund was also directly correlated with this Court's decision denying Vitran's Motion to Dismiss and granting Hall's Motion to Amend his Complaint to encompass a five-year class period under 15 U.S.C. § 1681p.   Counsel for both parties vigorously litigated to secure the most desirable outcome for their respective clients, and ultimately reach an agreement with the assistance of the Honorable Dan Aaron Polster.

"The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) (Beckwith, J.), citing *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005) and *In re Toys R Us Antitrust Lit.*, 191 F.R.D. 347, 3521 (E.D.N.Y. 2000). Here, the settlement was not easily obtained due to each party's position regarding class size, awards for each class and other disagreements.  The discourse required the assistance of the Court to finalize their agreement.

In evaluating possible fraud or collusion, courts address whether the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain Class Members at the expense of other Class Members. *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003). Here, there are no objectors to the settlement and no competing class actions pending in any other court.   Indeed, the Settlement was accomplished through informed, good faith,

extensive, and arm's-length negotiations resulting in class members receiving near or at the maximum statutory damages.

> ### 2. The Complexity, Expense and Likely Duration of Continued Litigation.

Generally "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys.*, 137 F.Supp.2d 985, 1013 (S.D. Ohio 2001). Unless the settlement is "clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004), quoting *Newberg*, § 11:50 at 155. It is proper "to take the bird in hand instead of a prospective flock in the bush." *DIRECTV*, 221 F.R.D. at 526, quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 596, 624 (D. Colo. 1974).

The Fair Credit Reporting Act is not merely a "complex statutory scheme," but one that has been said to contain "almost incomprehensibly complex provisions" and "esoteric strictures." *See Burrell v. DFS Services, LLC,* 753 F. Supp. 2d 438, 2010 U.S. Dist. LEXIS 128214, 2010 WL 4926704, * 1 (D. N.J. 2010); s*ee also Narog v. Certegy Check Servs.*, 759 F. Supp. 2d 1189, 1194-1195 (N.D. Cal. 2011).   If the settlement were rejected, Hall and all others similarly situated would have to bear the burden of proving that Vitran's actions were committed knowingly or recklessly. *See* S*afeco Ins. Co. v. Burr*, 551 U.S. 47, 56-57, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) (willful failure to comply can be established by a knowing or reckless violation of the statute). To prove willful violations would be very expensive and would likely take years to resolve.  If not resolved by mutual agreement, this case will surely proceed to trial, and probable appeal, and will involve further expense and greater uses of judicial resources. The trial could last several weeks and involve the introduction of voluminous documentary and

deposition evidence, strenuously contested motions, again all consuming substantial judicial and financial resources.  These additional expenses would ultimately be borne by the Class, and avoiding endless litigation in this matter strongly weighs in support of approval of the Settlement. *DIRECTV*, 221 F.R.D. at 527.

### 3.    The Amount of Discovery Conducted by the Parties

To ensure that plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of a proposed settlement, the stage of the proceedings and the amount of discovery must be considered. *See In re Telectronics Pacing Sys.*, 137 F.Supp.2d at 1015; *see also Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000).  The course and magnitude of discovery in this matter justifies approval. The putative class conducted extensive discovery regarding each of the relevant issues in the case, including reviewing over 35,000 pages of Vitran job applications.

The sheer amount of discovery undertaken in this case also weighs heavily in favor of final approval. See *DIRECTV*, 221 F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). The extended review of voluminous documents was necessary to determine the size of each class, as it was not immediately apparent which applicants: (1) had adverse criminal records, and (2) suffered an adverse employment decision because of the record.   Reviewing these documents provided invaluable insight into the hiring process, and the evolution of Vitran's pre-adverse and adverse action policies and protocols.  And as a result, both parties have been fully apprised as to all legal and factual issues.

### 4.    The Likelihood of Success on the Merits

The uncertainty of success on the merits is a factor which the Court must consider in favor of approving settlement.  *See Carpenters Health & Welfare Fund v. Coca-Cola Co.,* 2008

U.S. Dist. LEXIS 121093 (N.D. Ga. Oct. 20, 2008) ("…certainty of recovery clearly outweighs Lead Plaintiffs' uncertain prospects of success through continued litigation. This factor therefore favors approval of the settlement.")  Here, the settlement provides for near or the maximum statutory damages of $1,000.00 for each alleged violation of the FCRA.  As explained above, in order to achieve this same result at trial, the Class must demonstrate that Vitran willfully violated the FCRA, which includes "not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). Simply, the Class must demonstrate that Vitran took action involving "'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Safeco* at 68 (quoting Farmer v. Brennan, 511 U.S. 825, 836, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

If the Class successfully proves "willfulness" under the FCRA, the Court could ultimately award less than the maximum statutory damages of $1,000.00. *See* 15 U. S.C. § 1681n(a). Under this provision, a court has discretion to fix a damage award within the statutory range and may consider variables such as the actual amount of damages suffered, willfulness, and other factors. *See Aeschbacher v. Cal. Pizza Kitchen, Inc*., No. CV 07-215VBFJWX, 2007 U.S. Dist. LEXIS 34852, 2007 WL 1500853, at *3 (C.D. Cal. 2007 April 3, 2007); A*ndrade v. Chase Home Fin., L.L.C.*, No. 04 C 8229, 2005 U.S. Dist. LEXIS 32799, 2005 WL 3436400, at *6 (N.D. Ill. December 12, 2005); *Hoffer v. Landmark Chevrolet Ltd.,* 245 F.R.D. 588, 604 (S.D. Tex. 2007)  In light of the discretion to award between $100.00 and $1,000.00 per violation, duplicating the $800.00 gross payments to members of the Preliminary Settlement Class and $1,000.00 payments to members of the Pre-Adverse Action and Adverse Action subclasses is uncertain.

### 5.    The Opinions of Class Counsel and Class Representatives

In evaluating the adequacy of the terms of the settlement, the trial court is entitled to – and should – rely upon the judgment of experienced counsel for the parties. See *DIRECTV*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotations and citations omitted). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, Class Counsel and counsel for Vitran are seasoned practitioners with extensive FCRA litigation experience.  With their collective experience, understanding of the strengths and weaknesses of the case and analysis of the discovery produced to date, counsel jointly recommend that the Court approve the settlement. *See Declaration of Leonard Bennett attached hereto and incorporated herein as Exhibit 1.* And with first-hand knowledge regarding settlements in similar FCRA cases, counsel believe the settlement to be fair, reasonable, and adequate.  *See Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 852 (E.D. La. 2007). Finally, the Class Representative has also requested that the settlement be approved and his interests coincide with the interests of the Class.

### 6.    The Reaction of Absent Class Members

In evaluating a proposed class action settlement, the Court should look to the reaction of the class members. *Brotherton v. Cleveland*, 141 F.Supp.2d 894, 906 (S.D Ohio 2001). Here, more than 2,625 Class Members were provided notice of the proposed Settlement by direct mail. **To date, no class member has objected to the settlement and only one member has asked to**

**opt out.**[1] This overwhelming silence from class members, lack of objectors and only one opt-out demonstrates that the settlement is adequate. *See Brotherton*, 141 F. Supp. 2d at 906; *In re Delphi Corporation Securities Litig.*, 248 F.R.D. 483, 488-89 (E.D. Mich. 2008); *In re Cardizem Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003); Newberg on Class Actions, §11.48.

### 7.     The Public Interest

Last, the Court must consider the public interest in approving the settlement. *See In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 535 (3d Cir. Del. 2004) (there is an overriding public interest in settling class action litigation, and it should therefore be encouraged) The settlement of this matter brings closure to over two years of litigation, and the proceedings that gave rise to it brought relief to job applicants nationwide.  Moreover, the action itself prompted Vitran to immediately change its practices and to provide a clear and conspicuous disclosure to applicants that a consumer report would be obtained in the course of evaluating an application. Vitran also adopted a pre-adverse action and adverse action policy to provide applicants with an opportunity to confront alleged inaccuracies contained in the report.

### D.     Notice to the Class was reasonable and satisfies due process.

In class actions certified under Rule 23(b)(3), notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e).  Rule 23(e) specifies that "[n]o class action may be 'dismissed or compromised without [court] approval,' preceded by notice to class members."  Fed.R.Civ.P. 23(e).  Rule 23(c)(2) requires that notice to the class must be "the best

---

[1] Despite notice to all 50 Attorneys General and the United States Department of Justice, not one state or agency has filed an objection.  The lone contact has been from the State of Texas.  The Texas Deputy Attorney General raised one theoretical concern with the structure of the revised settlement – the reversion of $120,000 back to Vitran from either uncashed checks or if none, then from Class Counsel's potential fee.  Texas' concern was the possibility that Class Counsel would be dis-incentivized to identify class members to ensure that the reverted amount comes from the undeliverable checks rather than their fee.  However, while the Attorney General's concerns are correct in most instances of reversion, in this case there was no remaining discretion by the time the settlement was modified to include the reversion amount.  The Parties had by then fully identified class members.  Beyond this fact, the Court on final approval has the advantage of hindsight.  It can look back through the settlement and notice process to objectively confirm that the settlement was administered fairly and competently.

practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c).  The Rule also requires that the notice inform potential class members that: (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out; (3) and any member who does not opt out may appear through counsel.  *Id.*  The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient.  *See* Federal Judicial Center, *Manual for Complex Litigation* § 21.312 (4th 2004).

Here, the class list was compiled by compiling a list of names and addresses from Vitran, HireRight Solutions, Inc. (the CRA that provided consumer reports to Vitran)) and the Settlement Administrator.  Together, data from multiple sources was cross-referenced to identify unique class members with maximum precision and then to obtain the most recent address information available.  The addresses were then checked against the United States Postal Services' National Change of Address ("NCOA") database.[2]  Once the class list was compiled, notice was provided by direct mail, postage pre-paid.  The professional class action administrator generated and mailed the notices. *See the Declaration of Joel Botzet attached hereto and incorporated herein as Exhibit 2*.  Notices that were returned with new forwarding addresses were re-mailed.  *Id* at 10-11.  Notices returned without a forwarding address were subjected to a second screening and mailing process.   After the re-mailing, the Settlement Administrator was able to locate and confirm delivery of notices to 2,625 of 2,908 class members.  *See* Exhibit D of Joel Botzet Declaration.    Aside from retaining a private investigator, the Settlement Administrator undertook all reasonable efforts to locate each class member.

---

[2] The NCOA database "is a secure dataset of approximately 160 million permanent change-of-address (COA) records consisting of the names and addresses of individuals, families and businesses who have filed a change-of-address with the USPS" https://ribbs.usps.gov/index.cfm?page=ncoalink last viewed on May 11, 2011.

There is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 175-76 (1974). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. See *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985) (direct notice satisfies due process).

As a backstop, the Settlement Administrator also created a website containing copies of the class notice.  Internet email and website communications are routinely included in notification requirements of class action settlements. *See Browning v. Yahoo! Inc.*, 2006 WL 3826714 (N.D. Cal, 2006); *Farinella v. Paypal, Inc.*, 2009 WL 1211912 (E.D.N.Y., 2009); *Choicke v. Slippery Rock Univ.*, 2007 WL 2317323 (W.D. Pa., 2007); *Todd v. Retail Concepts, Inc.*, 2008 WL 3981593 (M.D. Tenn. 2008).  Vitran also served notice of the settlement upon the relevant state and federal authorities as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715.  Only the Texas Attorney General corresponded with the Court regarding the settlement.  Class Counsel articulated the procedural history of the case together with the rationale for the settlement to the Attorney General and has not received any additional correspondence.

E.     The class satisfies the requirements for certification under Fed. R. Civ. P. 23.

In the course of approving the settlement, the Court must also certify the litigation as a class action under Fed.R.Civ.P. 23. Hall and the putative class satisfy the four requirements of Fed.R.Civ.P.  23(a): numerosity, commonality, typicality and adequacy of representation. Further, the putative class satisfies Fed.R.Civ.P.  23(b)(1) and Fed.R.Civ.P. 23(b)(3) by

presenting common questions that are a significant aspect of the case and can be resolved for all members in a single adjudication, avoiding the risk of inconsistent results. *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998).

The class, with more than 2,908 members, is sufficiently large such that joinder of all class members would be impracticable. There are also common issues of law and fact that predominate:

1. Did Vitran violate the FCRA by failing to obtain adequate authorization prior to obtaining an applicant's consumer report for employment purposes?

2. Did Vitran violate the FCRA by failing to provide adequate pre-adverse action rights and notices to applicants prior to taking adverse action based in whole or in part on the consumer report?

3. Did Vitran violate the FCRA by failing to provide applicants, after adverse action is taken, with notices of his or her right to receive a free copy of the consumer report in question, the contact information for the CRA that provided the report and the right to dispute inaccurate information?

The resolution of these common questions will affect each class member as a whole, and can be resolved most efficiently in the context of a class action. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998).

As for the requirement of typicality, the interests of Hall arise from the same course of conduct that gives rise to the claims of the other class members. See *In re American Medical Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Indeed, Hall received and completed the same application and disclosure as all other Preliminary Settlement Class members.  And like all members of the pre-adverse action subclass, Hall did not receive pre-adverse action notice prior to Vitran's decision to take adverse action based upon a consumer report.  And last, like all adverse action subclass members, Hall did not receive adverse action notice of his right to obtain

a free copy of the consumer report from the CRA, along with the CRA's name and contact information and instructions to dispute inaccurate information.

Further, "adequate representation is essential to a class action because without it there can be no preclusive effect of the judgment." *Elkins v. Am. Showa, Inc.*, 219 F.R.D. 414, 419 (S.D. Ohio 2002). To assess the adequacy of the representation, the Court must consider whether the class representative will "fairly and adequately protect the interests of the class using a two-prong inquiry: "(1) The representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. GMC*, 532 F.2d 511, 525 (6th Cir. 1976); *see also* Fed.R.Civ.P. 23(a)(4). Here, Hall shares with the putative class members a desire to recover damages from Vitran for its alleged violations of consumer rights under the FCRA. Moreover, Class Counsel has extensive FCRA litigation experience including the prosecution of other consumer class action lawsuits, and has demonstrated a willingness to vigorously pursue the claims of the members of each class.

In addition, Rule 23(b)(3)'s requirements of predominance and superiority are met. The predominance inquiry tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods, Inc. v..Windsor*, 521 U.S. 591, 623 (1997). This requirement is satisfied where the question common to the Class is "at the heart of the litigation." *Powers v. Hamilton County Public Defender Comm.*, 501 F.3d 592, 619 (6th Cir. 2007). The question of Vitran's disclosures, authorizations, and preadverse and adverse action policies and procedures predominates over any individual questions.

The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the

prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. Fed.R.Civ.P. 23(b)(3). Given the arguably limited resources of each individual class member, there is a strong interest in prosecuting these claims in one particular forum.

F.     The Court should approve the request for an award of incentive payments, attorneys' fees and reimbursement of expenses.

### 1.     The Court should award an incentive payment to the Class Representative.

It is within the Court's discretion to grant or deny an award of an incentive award.  *See Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003).  The Parties have agreed that Hall should receive an incentive award of $10,000 for his service as a named class representative.  He took an active role in the case, participated in the drafting of the pleadings, and was actively involved with his counsel in prosecuting the case. Without Hall's participation in this matter, the case may not have been filed and relief would not have been provided to Class Members.  He attended the mediation and remained an active part of the case through settlement.  Plainly, Mr. Hall was exactly all that a class representative should be.

### 2.     The Court should award attorneys' fees based upon a percentage of the common fund.

The Supreme Court has consistently calculated attorneys' fees in common funds cases on a percentage-of-the-fund basis.  *See Sprague v. Ticonic Nat'l* Bank, 307 U.S. 161, 165-67 (1939); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478-79 (1980); *Blum v. Stenson,* 465 U.S. 886, 900 n. 16 (1984); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney* Fees, 108 F.R.D. 237, 242 (Oct. 8, 1985) (noting that fee awards in common funds cases have historically been computed based on a percentage of the fund).  The Supreme Court has never

adopted the lodestar method over the percentage of recovery method in a common fund case, even when lower federal courts began using the lodestar approach in the 1970s.  *See Shaw v. Toshiba Am. Info. Sys., Inc.* 91 F. Supp. 2d 942, 943 (E.D. Tex. 2000); *see also Manual for Complex Litigation* § 24.121 at 210.

Since *Blum,* virtually every Circuit Court of Appeals has joined the Supreme Court in affirmatively endorsing the percentage of recovery method as an appropriate method for determining an amount of attorneys' fees in common fund cases.  *See In re GMC*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002); *In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.,* 56 F.3d 295 (1st Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 515-16 (6th Cir. 1993); *Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993); *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 49 (2d Cir. 2000).

The "common fund doctrine" has been recognized by the Sixth Circuit. *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) ("In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."); *see also Vassalle v. Midland Funding,* 2011 U.S. Dist. LEXIS 90278, 52-53 (N.D. Ohio Aug. 12, 2011).  In considering the reasonableness of a fee award, the Court looks to six factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

In applying the *Ramey* test, Class Counsel's efforts support the reasonableness of a fee award calculated as 30% of the common fund.  As discussed above, Class Counsel successfully negotiated settlement awards for each class near or at the $1,000.00 statutory maximum and litigated to maximize the class size to include a five-year period.  This was a significant benefit rendered to the class.

Additionally, this matter was litigated on a contingency basis.  Class Counsel has neither sought nor received payment for services rendered during the past twenty-eight (28) months of litigation.  Counsel has also advanced all fees and costs associated therein.  However, should the Court consider the amount of time required to conduct motion practice and review over 35,000 pages of job applications, the hours spent together with the reasonable hourly rate for this type of litigation support the requested 30% contingency award.  *See the Declaration of Dennis O'Toole attached hereto and incorporated herein as Exhibit 3.*

Last, the Parties expressly agreed that Class Counsel may seek attorney's fees up to 30% of the common fund without opposition from Vitran. This amount is commensurate with fee awards approved in other common fund cases. *See, e.g., Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) (33% of settlement amount); *Clevenger v. Dillards, Inc.*, 2007 WL 764291 (S.D. Ohio Mar. 9, 2007) (29% of settlement fund); *New England Employees Pension Fund v. Fruit of the Loom*, 234 F.R.D. 627, 634) (W.D. Ky. 2006) (25% of the total settlement fund).

## IV.    CONCLUSION

The Parties reached a settlement that provides genuine relief to Class Members.  Each class member will receive a monetary benefit, and Vitran has established procedures to ensure compliance with the FCRA in the future.  The terms of the settlement and circumstances

surrounding negotiations as well as the finite end to a costly and protracted litigation satisfies the Sixth Circuit's strictures for final approval.

      **WHEREFORE**, Hall and the putative class, and Vitran jointly move the Court for an order entering the final approval of this settlement and award the incentive payment, attorneys' fees and costs as requested herein. Class Counsel submits a Proposed Order attached hereto and incorporated herein for the Court's consideration.

STUMPHAUZER, O'TOOLE, McLAUGHLIN, McGLAMERY & LOUGHMAN CO., LPA

By:    /s/ Dennis M. O'Toole
Dennis M. O'Toole (0003274)
Anthony R. Pecora (0069660)
Matthew A. Dooley (0081482)
5455 Detroit Road,
Sheffield Village, Ohio  44054
Tel:    (440) 930-4001
Fax:    (440) 934-7208
Email:    dotoole@sheffieldlaw.com
    apecora@sheffieldlaw.com
    mdooley@sheffieldlaw.com
and

CONSUMER LITIGATION ASSOCIATES, P.A

/s/ Leonard A. Bennett
Leonard A. Bennett (Va. Bar No. 37523)
12515 Warwick Boulevard,
Newport News, Virginia 23606
Tel:    (757) 930-3660
Fax:    (757) 930-3662
Email:    lenbennett@clalegal.com
*Counsel for Thomas E. Hall and the putative class*

and

23

MCDONALD HOPKINS, LLC

/s/ Tyler L. Mathews
William J. O'Neill (0029936)
Tyler L. Mathews (0063759)
600 Superior Avenue, East,
Suite 2100
Cleveland, Ohio 44114
Tel:            (216) 348-5400
Fax:           (216) 348-5474
E-mail:        woneill@mcdonaldhopkins.com
               tmathews@mcdonaldhopkins.com
*Counsel for Defendant Vitran Express, Inc.*

## CERTIFICATE OF SERVICE

This will certify that a copy of the foregoing Joint Motion for Order Granting Final Approval of Class Action Settlement, an Award of Incentive Payments, Attorneys' Fees, and Expenses was filed electronically this 22nd day of August, 2011.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or via regular mail.

/s Dennis O'Toole
Dennis M. O'Toole
*Counsel for Thomas E. Hall and the putative class*