IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **THOMAS E. HALL, on Behalf of Himself and All Others Similarly Situated**<br><br>Plaintiff,<br><br>vs.<br><br>**VITRAN EXPRESS, INC.**<br>Defendant. | CASE NO. 1:09-cv-00800<br><br>UNITED STATES DISTRICT JUDGE DAN AARON POLSTER |

**FINAL ORDER AND JUDGMENT APPROVING SETTLEMENT, CERTIFYING SETTLEMENT CLASS AND DISMISSING ACTION**

This matter having come before the Court on August 31, 2011 upon the Plaintiff's and Defendant's Joint Motion for Order Granting Approval of Class Action Settlement, an Award of Incentive Payment, Attorneys Fees and Reimbursement of Expenses, and upon review and consideration of the Settlement Agreement dated April 19, 2011 (the "Settlement Agreement"), the exhibits to the Settlement Agreement, the evidence and arguments of counsel presented at the Court Approval Hearing, and the submissions filed with this Court in connection with the Court Approval Hearing, IT IS HEREBY ORDERED and adjudged as follows:

Pursuant to Fed. R. Civ. P. 23(e), the settlement of this action, as embodied in the terms of the Settlement Agreement, is hereby finally approved as a fair, reasonable and adequate settlement of this action in light of the factual, legal, practical and procedural considerations raised by this action. The Settlement Agreement is hereby incorporated by reference into this Final Order and Judgment Approving Settlement, Certifying Settlement Class, and Dismissing

1

Action ("Order"). Capitalized terms in this Order shall, unless otherwise defined, have the same meaning as in the Settlement Agreement.

### FINAL ORDER AND JUDGMENT

On April 7, 2009 Plaintiff, Thomas E. Hall (hereinafter referred to as "Hall" or "Class Representative"), filed the above-captioned class action lawsuit (hereinafter referred to as the "Lawsuit") against Defendant, Vitran Express, Inc. (hereinafter referred to as "Vitran"). Hall asserted class claims against Vitran under the Fair Credit Reporting Act (hereinafter referred to as the "FCRA"), 15 U.S.C. § 1681, *et seq.*

Vitran denied any and all liability alleged in the Lawsuit.

After extensive arms-length negotiations, discovery and mediation with the Court, Hall and Vitran (hereinafter jointly referred to as the "Parties") entered into a Second Amended Stipulation of Settlement (hereinafter referred to as the "Agreement"), which is subject to review under Fed. R. Civ. P. 23.

On April 13, 2011, the Parties filed the Agreement, along with their Motion for Preliminary Approval of Class Action Settlement (hereinafter referred to as the "Preliminary Approval Motion").

In compliance with the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, Vitran served written notice of the proposed class settlement on the United States Attorney General and the Attorneys General of all 50 states.

On April 19, 2011, upon consideration of the Parties' Preliminary Approval Motion and the record, the Court entered an Order of Preliminary Approval of Class Action Settlement (hereinafter referred to as the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Court, among other things, (i) preliminarily certified (for settlement

purposes only) a class of plaintiffs (hereinafter referred to as the "Class Members") with respect to the claims asserted in the Lawsuit; (ii) preliminarily approved the proposed settlement; (iii) appointed Hall as the Class Representative; (iv) appointed Mr. Leonard A. Bennett, Mr. Dennis M. O'Toole, Mr. Matthew A. Dooley and Mr. Anthony R. Pecora as Class Counsel; and, (v) set the date and time of the Fairness Hearing.

On August 22, 2011, the Parties filed their Motion for Final Approval of Class Action Settlement (hereinafter referred to as the "Final Approval Motion").

On August 31, 2011 at 12:00 p.m. EST, a Fairness Hearing was held pursuant to Fed. R. Civ. P. 23 to determine whether the Lawsuit satisfies the applicable prerequisites for class action treatment and whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be approved by the Court.

The Parties now request final certification of the settlement class under Fed. R. Civ. P. 23 (b)(3) and final approval of the proposed class action settlement.

The Court has read and considered the Agreement, Final Approval Motion, and record finds as follows:

1. The Court has jurisdiction over the subject matter of the Lawsuit and over all settling parties hereto.

2. Pursuant to Fed. R. Civ. P. 23(b)(3), the Lawsuit is hereby certified as a class action on behalf of the following class of plaintiffs (hereinafter referred to as the "Class Members") with respect to the claims asserted in the Lawsuit, and composed of 2 Subclasses;

> **Preliminary Settlement Class:** The Preliminary Settlement Class consists of Consumers residing in the United States who applied for employment with Vitran, and during the application process, Vitran procured a criminal background report or other consumer report without first, (i) providing the consumer(s) with a clear and conspicuous disclosure in writing in a document that consisted

3

solely of the disclosure that a consumer report would be obtained for employment purposes, and (ii) obtaining the proper written authorization of the consumer(s) to procure such consumer reports as defined by claims asserted in Count I of the Third Amended Complaint.

**Pre-Adverse Action Class**: The Pre-Adverse Action Class is a sub-class of the Preliminary Settlement Class, which consists of consumers described above who, before Vitran declined their employment, were not provided with a copy of their criminal background report or other consumer report which was used for employment screening prior to Defendant's employment decision if the same was based in whole or in part on said report. Said sub-class members further did not receive from Vitran a copy of the summary of rights as required by the FCRA prior to Defendant taking adverse action which was based on or in part on the criminal background or other consumer report used for employment screening. These sub-class members' claims are encompassed by 15 U.S.C. §§ 1681b(b)(3)(A)(i) and 1681b(b)(3)(A)(ii) as defined in Count II of the Third Amended Complaint.

**Adverse Action Class**: The Adverse Action Class is a sub-class of the Preliminary Settlement Class which consists of consumers described above who were not provided with oral, written or electronic notice by Vitran that the consumer reporting agency ("CRA") which issued a criminal background report or other consumer report on the consumer did not make the decision to take adverse action, and that the CRA is unable to provide the consumer with the specific reasons why the adverse action was taken. Vitran further failed to provide oral, written or electronic notice to the consumer of his or her right to obtain, within 60 days, a free copy of the consumer report regarding the consumer from the CRA which prepared the report. These sub-class members' claims are encompassed by 15 U.S.C. §§ 1681m(a)(2)(B) and 1681m(a)(3)(A) as defined in Count III of the Third Amended Complaint.

3. There are approximately 2,625 Preliminary Class Members, 127 Pre-Adverse Action Class Members and 124 Adverse Action Class Members.

4. Pursuant to Fed. R. Civ. P. 23, the Court certifies Plaintiff Thomas E. Hall as the Class Representative and Mr. Leonard A. Bennett, Mr. Dennis M. O'Toole, Mr. Matthew A. Dooley and Mr. Anthony R. Pecora as Class Counsel.

5. Pursuant to the Court's Preliminary Approval Order, the approved class action notices were mailed to Class Members in conformity with this Court's Preliminary Approval Order and satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, and constituted the best notice practicable under the circumstances. The Court finds that the notice was clearly designed to advise the Class Members of their rights.

6. The Court finds that the Lawsuit satisfies the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23, namely:

    a. The Class Members are so numerous that joinder of all of them in the Lawsuit is impracticable;

    b. There are questions of law and fact common to the Class Members, which predominate over any individual questions;

    c. The claims of the Class Representatives are typical of the claims of the Class Members;

    d. The Class Representative and Class Counsel have fairly and adequately represented and protected the interests of all of the Class Members; and

    e. Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

7. The Court finds that the settlement of the Lawsuit, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the Class Members, especially in light of the benefits to the Class Members; the strength of the Plaintiff's case; the complexity, expense, and probable duration of further litigation; the risk and delay inherent in possible appeals; the risk of collecting any judgment obtained on behalf of the class; and, the limited amount of any potential total recovery for the class.

8. The Agreement, which was filed on April 13, 2011 (Doc 46), shall be deemed

incorporated herein, and the proposed settlement is finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any order issued by this Court. The material terms of the Agreement include, but are not limited to, the following:

    a. Vitran will pay into a Settlement Fund a gross sum of $2,600,000.00. From this Settlement Fund:

        1. Each Preliminary Class Member shall receive gross sum of $800.00;

        2. Each Pre-Adverse Action Class Member shall receive a gross sum of $1,000.00;

        3. Each Adverse Action Class Member shall receive a gross sum of $1,000.00; and

        4. The Class Representative shall receive a total sum of $10,000.00.

    b. From the Settlement Fund, the Court awards 30% of the total settlement fund of $2,600,000.00 as attorneys' fees for Class Counsel.

    c. Vitran shall receive a sum which equals the greater of $120,000.00 or twenty-three percent (23%) of the uncashed checks net of fees and expenses. Should the amount of uncashed checks be less than $120,000.00, Class Counsel shall absorb the difference to be paid to Vitran from attorneys' fees, not to exceed $120,000.00; and

    d. Any remaining sums shall be distributed to a *cy pres* beneficiary selected by Class Counsel and approved by the Court.

9. Class Counsel's recommendation of the West Side Catholic Center as a c*y pres* beneficiary is consistent with the gravamen of the Litigation, and shall be used to support the community through a program more fully described on Exhibit A through a disbursement of uncashed checks, if any, pursuant to Paragraph 8(d) above.

10. The Class Members were given an opportunity to object to the settlement. No Class Members objected to the settlement. The Class Members who made valid and timely requests for exclusion are excluded from the class and settlement and are not bound by this

6

order. Only one (1) Class Member requested exclusion. The identity of such person is set forth in the Opt-Out List filed under seal.

11. This order is binding on all Class Members, except those individuals identified in the Opt-Out List filed under seal hereto, who validly and timely excluded themselves from the class.

12. The Class Representative, Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims against any of the Released Parties, as set forth in the Agreement. Pursuant to the release contained in the Agreement, the Released Claims are compromised, settled, released, discharged, and dismissed with prejudice by virtue of these proceedings and this order.

13. The Lawsuit is hereby dismissed with prejudice in all respects.

14. This order is not, and shall not be construed as, an admission by Vitran of any liability or wrongdoing in this or in any other proceeding.

15. The Court hereby retains continuing and exclusive jurisdiction over the Parties and all matters relating to the Lawsuit and/or Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this order.

IT IS SO ORDERED.

DATED: _____     _____
                           JUDGE DAN AARON POLSTER
                           UNITED STATES DISTRICT COURT JUDGE

# West Side Catholic Center
# Proposal for the Use of Cy Pres Funds
# The Identification Crisis Collaborative

**Background.**
In 2001, the Identification Crisis Collaborative (the IDCC) was formed to address a major obstacle for the poor in securing employment and governmental benefits: their inability to obtain their birth certificates and state identification cards. While a state identification costs $8.50, the supporting birth certificate – required in order to apply for the state ID – exceeds $25.00. Today the IDCC consists of 20 non-profit agencies so that assistance is available over a broad geographic region. No agency receives funding for indirect costs (personnel, computer usage, telephone or overhead). By working together, the participating agencies decrease the cost of securing clients' documentation and avoid multiple agencies making identical requests. The West Side Catholic Center serves as both a participating agency and the fiscal agent for the IDCC. Funding for the IDCC will end in March 2012.

### IDCC Program Statistics

| Year | BC | State ID | Amount |
|---|---|---|---|
| 2007 | 2,185 BC | 920 State ID | $44,991.65 |
| 2008 | 1,587 BC | 1,425 State ID | $41,222.89 |
| 2009 | 1,523 BC | 1,148 State ID | $40,582.55 |
| 2010 | 2,327 BC | 1,813 State ID | $71,203.95 |
| 2011 (YTD) | 1,139 BC | 849 State ID | $35,453.25 |

**Proposal.**
We are requesting a donation from the *Vitran* settlement after class members have received a full opportunity to make claims. The money will be placed in a separate account and used to fund the IDCC – providing an opportunity for the poor and homeless to obtain identification to secure jobs, healthcare, housing and other benefits. The funds will be used solely for governmental fees for official documents and associated mailing and/or delivery costs. Volunteers at the participating agencies will continue to provide clients with assistance in assembling the required paperwork to secure identification.

**Evidence of Program Success.**
Success will be measured by the number of individuals helped to acquire identification documents. A detailed summary can be provided to the parties.

**Why Fund this Program?**
The *Vitran* litigation involved preconditions to employment that were not disclosed at the time the application was made. The donation to the IDCC will benefit a broader class of those seeking to obtain the basic preconditions of employment. While the IDCC is not limited to class members, it broadly benefits a class of all who are seeking employment.

The West Side Catholic Center provides services to those in need without regard to religion. It is not funded by the Diocese of Cleveland, but is funded through the generosity of individual donors and foundations. It also receives government grants. The Center provides housing, food, clothing and a place of welcoming to the homeless. Our clients are the neediest among us.

3135 Lorain Avenue     Cleveland, OH 44113     216.631.4741     www.helpcleveland.org

EXHIBIT A